1  HENNIGAN, BENNETT & DORMAN LLP
   BRUCE BENNETT (Cal. Bar No. 105430)
2  JAMES O. JOHNSTON (Cal. Bar No. 167330)
   LANCE MILLER (Cal. Bar No. 241905)
3  865 South Figueroa Street, Suite 2900
   Los Angeles, California 90017
4  Telephone: (213) 694-1200
   Fax: (213) 694-1234
5
   *Proposed Reorganization Counsel for*
6  *Debtors and Debtors in Possession.*
7

FILED
DEC 1 7 2007

ENTERED
DEC 1 7 2007
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

8              UNITED STATES BANKRUPTCY COURT
9                CENTRAL DISTRICT OF CALIFORNIA
                    LOS ANGELES DIVISION

10  *In re*                          )  Case No. 2:07-20027-TD
                                     )  CHAPTER 11
11  SOLIDUS NETWORKS, INC. d/b/a )  (Jointly Administered)
    PAY BY TOUCH, a Delaware         )
12  Corporation, et al.[1]            )  **[PROPOSED] INTERIM ORDER (I) AUTHORIZING**
                                     )  **DEBTORS TO OBTAIN POSTPETITION**
13         *Debtors.*                 )  **FINANCING PURSUANT TO SECTIONS 363 AND**
                                     )  **364 OF THE BANKRUPTCY CODE, (II) GRANTING**
14                                   )  **LIENS AND SUPERPRIORITY CLAIMS TO**
                                     )  **POSTPETITION LENDERS PURSUANT TO**
15                                   )  **SECTION 364 OF BANKRUPTCY CODE,**
                                     )  **(III) AUTHORIZING USE OF CASH COLLATERAL**
16                                   )  **PURSUANT TO SECTION 363 OF BANKRUPTCY**
                                     )  **CODE, (IV) PROVIDING ADEQUATE PROTECTION**
17                                   )  **TO PREPETITION LENDERS PURSUANT TO**
                                     )  **SECTIONS 361, 362, 363 AND 364 OF THE**
18                                   )  **BANKRUPTCY CODE AND (V) SCHEDULING A**
                                     )  **FINAL HEARING**
19                                   )
20                                   )  Interim Hearing
                                     )
21                                   )  Date:  December 17, 2007
                                     )  Time:  11:00 a.m.
22                                   )  Place: 255 East Temple Street
                                     )         Courtroom 1352
23                                   )         Los Angeles, CA 90012
                                     )
24
25
26  [1]  The Debtors include the following entities: Solidus Networks, Inc., d/b/a Pay By Touch, a/k/a Pay By Touch Solutions, a/f/k/a BioPay, Pay By
        Touch Payment Solutions, LLC, a/f/k/a EPX, a/f/k/a Payment Acquisition Corporation, a/f/k/a InterCept Payment Solutions, LLC, a/f/k/a SPS
27      Payments, LLC, a/f/k/a IPS Solutions, LLC, a/f/k/a iPay, a/f/k/a Pay By Touch Solidus Merchant Services, Pay By Touch Processing, Inc.,
        a/f/k/a CSSI Acquisition Corporation, a/f/k/a Card Systems Solutions, Inc., Pay By Touch Check Cashing, Inc., Check Elect, Inc., Seven
        Acquisition Sub, LLC, a/f/k/a Seven Street Software, Pay by Touch Checking Resources, Inc., Indivos Corporation, a/f/k/a Smart Touch, Inc.,
28      a/f./k/a Veristar Corporation, a/f/k/a Indivos Acquisition Corporation, CardSystems Payment Solutions, LLC, Maverick International Services,
        Inc., and ATMD Acquisition Corporation, a/f/k/a ATMD Direct, a/f/k/a ATM Online, Inc.

1   Upon the motion (the "**Motion**"), dated December 14, 2007, of Solidus Networks, Inc., d/b/a

2   Pay By Touch ("**Solidus**" or the "**Company**"), Pay By Touch Processing, Inc., Maverick

3   International Services, Inc., Card Systems Payment Solutions, LLC, Check Elect, Inc., Indivos

4   Corporation, Pay By Touch Payment Solutions, LLC, Seven Acquisition Sub, LLC, Pay By Touch

5   Check Cashing, Inc., Pay By Touch Checking Resources, Inc., and ATMD Acquisition Corp., as

6   debtors and debtors in possession (collectively, the "**Debtors**"), (a) for entry of this Order and the

7   Final Order (as hereinafter defined) authorizing the Debtors (i) to obtain postpetition financing

8   pursuant to sections 363 and 364 of title 11 of the United States Code (the "**Bankruptcy Code**") by

9   entering into a senior secured superpriority debtor in possession credit and guaranty agreement (as

10  the same may be amended, supplemented or otherwise modified from time to time, the

11  "**Postpetition Credit Agreement**"),[2] substantially in the form annexed to the Motion as **Exhibit B**,

12  among Solidus, as borrower, each of the other Debtors, Loyalty Acquisition Sub, LLC, S&H

13  Marketing, Inc., and The Sperry and Hutchinson Company, Inc.,[3] as guarantors (each, individually, a

14  "**Guarantor**" and, collectively, the "**Guarantors**"), the lenders from time to time parties thereto

15  (collectively, the "**Postpetition Lenders**"), and The Bank of New York, as administrative agent and

16  collateral agent (in each capacity, the "**Postpetition Agent**"), (ii) to grant Liens and superpriority

17  claims to and on behalf of and for the benefit of the Postpetition Agent and the Postpetition Lenders

18  in all Collateral (as defined herein) in accordance with the Collateral Documents and this Order and

19  the Final Order to secure any and all of the Postpetition Obligations (as hereinafter defined), (iii) to

20  use Cash Collateral (as hereinafter defined), and (iv) pending a final hearing on the Motion (the

21  "**Final Hearing**"), to obtain emergency postpetition loans, in an amount not to exceed the amounts

22  set forth in the DIP Budget through the entry of the Final Order, under the Postpetition Credit

23  Agreement to and including the date on which the Final Order is entered (the "**Interim Facility**"),

24  (b) requesting the provision of adequate protection to certain of the Debtors' prepetition and gap

---

[2]   Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Postpetition Credit Agreement.

[3]   Loyalty Acquisition Sub, LLC, S&H Marketing, Inc. and The Sperry and Hutchinson Company, Inc. are not Debtors, nor are they presently the subject of any insolvency proceedings. They, however, are guarantors of the obligations under the Postpetition Credit Agreement.

1    period secured lenders and (c) in accordance with Rule 4001(c)(2) of the Federal Rules of

2    Bankruptcy Procedure (the "**Bankruptcy Rules**"), requesting that this Court schedule the Final

3    Hearing and approve notice with respect thereto; and

4        The Court having considered the Motion and the exhibits attached thereto, including, without

5    limitation, the Postpetition Credit Agreement; and a hearing to consider approval of the Interim

6    Facility having been held and concluded on December 17, 2007 (the "**Interim Hearing**"); and

7        Upon all of the pleadings filed with the Court and all of the proceedings held before the

8    Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

9    **IT IS HEREBY FOUND, CONCLUDED AND DECLARED THAT:**[4]

10       A.     On October 31, 2007 (the "**Petition Date**"), certain purported creditors of the

11    Company filed with this Court an involuntary petition for relief under chapter 11 of the Bankruptcy

12    Code against the Company.

13       B.     On December 14, 2007 (the "**Consent Date**"), (i) the Debtors other than the

14    Company filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and (ii) the

15    Company consented to the entry of an order for relief in response to the involuntary petition (as a

16    result of which this Court entered an order for relief with respect to the Company). In a

17    concurrently-filed motion that is presently pending, the Debtors have requested that this Court order

18    that the chapter 11 cases of the Company and the other Debtors be jointly administered for

19    procedural purposes only (collectively, the "**Chapter 11 Cases**"). The Debtors are continuing in the

20    management and possession of their businesses and properties as debtors in possession pursuant to

21    sections 1107 and 1108 of the Bankruptcy Code.

22       C.     No written request has been made for the appointment of a trustee or examiner, and

23    no statutory committee (a "**Committee**") has yet been appointed in the Chapter 11 Cases.

24       D.     Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C.

25    §§ 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected

26    hereby pursuant to 28 U.S.C. §§ 157 and 1334.

27

28

[4]   Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact as appropriate.

647084.03

E.      Without prejudice to the rights of any other party, but subject to the time limitations specified in Paragraph 43(b) below, the Debtors acknowledge, admit and confirm the following:

1.      Pursuant to that certain Amended and Restated Securities Purchase Agreement, dated as of December 6, 2005[5] (the "**Prepetition SPA**"), by and among Solidus, each of the Purchasers named therein, and The Bank of New York, as agent for the Purchasers under the Prepetition SPA (the "**Prepetition Agent**"), and together with all guarantees (including, but not limited to, the Guarantee referenced in paragraph 2 below), subordination and intercreditor agreements (including, but not limited to, that certain Intercreditor and Subordination Agreement, dated of as December 4, 2006, between the Prepetition Lenders (the "**Intercreditor Agreement**")[6], certain consents, waivers, and amendments thereto (including, but not limited to, that certain Consent, Waiver, and Amendment, dated as of December 4, 2006, and that certain Consent, Waiver and Amendment, dated as of February 28, 2007), deposit account control agreements, notes, pledges, instruments and any other agreements and documents delivered pursuant thereto or in connection therewith, including, without limitation, the Transaction Documents (as defined in the Prepetition SPA) (collectively, and as amended, restated, supplemented or otherwise modified from time to time, together with the Prepetition SPA, the "**Prepetition Financing Documents**"), the Prepetition Lenders (as defined below) made certain loans before the Petition Date to the Company to fund, among other things, the operations of the Company.

---

[5] The Funding Amendment (as defined below) was executed subsequent to the Petition Date but prior to entry of an order for relief in the Company's Chapter 11 Case. Accordingly, the Funding Amendment, the Funding Notes (as defined in the Funding Amendment), the Budget (as defined in the Funding Amendment), the Disbursement Schedule (as defined in the Funding Amendment), and the Gap Period Financing Orders (as defined herein) (collectively, the "**Gap Period Financing Documents**") do not constitute "Prepetition Financing Documents" as such term is defined herein.

[6] The Intercreditor Agreement governs the relative rights and priorities of the Liens and claims of the holders of the Senior Secured Notes (as defined below) and the Senior Subordinated Notes (as defined below).

647084 03

2.    Substantially all of the Company's subsidiaries, including the Guarantors of the Postpetition Credit Agreement (other than Pay By Touch Checking Resources, Inc., and ATMD Acquisition Corp.), have entered into that certain Guarantee in favor of the Prepetition Agent for the benefit of the Prepetition Lenders, dated as of February 28, 2006 (the "**Guarantee**"), or have become party to the Guarantee through Supplement No. 1, dated as of May 16, 2006, or Supplement No. 2, dated as of June 15, 2007, with respect to the Obligations (as hereinafter defined) arising pursuant to the Prepetition SPA.

3.    Pursuant to the Prepetition SPA and the other Prepetition Financing Documents, the Company, among other things, issued to OZ Master Fund, Ltd., Denarius Touch, L.L.C., Highbridge International LLC and Plainfield Special Situations Masterfund Limited (the "**Prepetition Senior Lenders**") Senior Secured Promissory Notes in the principal amount of $100 million (the "**Senior Secured Notes**") as well as Subordinated Unsecured Promissory Notes and Warrants to Purchase Common Stock of the Company. As of the Petition Date, the Company was indebted to the Prepetition Senior Lenders under the Senior Secured Notes in the aggregate principal amount of $100 million, exclusive of accrued but unpaid interest, costs, fees and expenses (the "**Prepetition Senior Indebtedness**").

4.    Additionally, along with the issuance of the Senior Secured Notes, the Company issued to Plainfield Special Situations Masterfund Limited ("**PSSMF**") and Plainfield West Investments LLC, an affiliate of PSSMF (collectively, "**Plainfield**" or the "**Prepetition Subordinated Lenders**" and together with the Prepetition Senior Lenders, the "**Prepetition Lenders**"), Senior Subordinated Secured Convertible Promissory Notes (the "**Senior Subordinated Notes**") pursuant to the Prepetition SPA, that certain Consent, Waiver, and Amendment, dated as of December 4, 2006, and that certain Consent, Waiver and Amendment, dated as of February 28, 2007. As of the Petition Date, the Company was indebted to the Prepetition Subordinated Lenders under the Senior Subordinated Notes in the aggregate principal amount of $50 million, exclusive of accrued but unpaid interest, costs, fees and expenses (the "**Prepetition Subordinated Indebtedness**").

-4-

647084.03

5.    For purposes of this Order, the term "**Prepetition Indebtedness**" shall mean and include, without duplication, the Prepetition Senior Indebtedness and the Prepetition Subordinated Indebtedness outstanding under the Prepetition SPA (including, without limitation, all Obligations as defined in the Prepetition SPA) or any other Prepetition Financing Document, interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable pursuant to the Prepetition SPA or any other Prepetition Financing Document), and any and all obligations and liabilities, contingent or otherwise, owed in respect of other Obligations outstanding thereunder.

6.    Pursuant to certain security agreements (including, but not limited to, that certain Amended and Restated Security Agreement, dated as of December 6, 2005), deposit account control agreements, guaranties, intellectual property security agreements, and other documents and agreements (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "**Prepetition Security Documents**"), and the other Prepetition Financing Documents, and to secure the Prepetition Senior Indebtedness, the Company and the subsidiaries party to the Guarantee granted, to and/or for the benefit of the Prepetition Agent and the Prepetition Senior Lenders, interests in certain collateral (the "**Prepetition Senior Collateral**"), consisting of (i) first priority Liens and continuing pledges and security interests in substantially all of their assets other than assets on which they granted second priority liens as described in the following clause, and (ii) second priority Liens and continuing pledges and security interests in other collateral including, without limitation, certain trademarks ((i) and (ii) collectively, the "**Prepetition Senior Liens**").

7.    Pursuant to the Prepetition Security Documents and the other Prepetition Financing Documents, and to secure the Prepetition Subordinated Indebtedness, the Company granted, to and/or for the benefit of the Prepetition Agent and the Prepetition Subordinated Lenders, Liens and continuing pledges and security interests in the collateral that is subject to the Prepetition Senior Liens (the "**Prepetition Junior Liens**" and together

647084.03

with the Prepetition Senior Liens, the "**Prepetition Liens**", and the collateral that is the subject of the Prepetition Junior Liens, the "**Prepetition Junior Collateral**").

8.    On November 20, 2007, certain of the Prepetition Senior Lenders (the "**Gap Period Lenders**") entered into that certain Funding Amendment to the Prepetition SPA to provide $9 million of emergency financing to the Company (the "**Gap Period Financing**"). The amounts loaned under and the obligations arising under or related to the Gap Period Financing (the "**Gap Obligations**") are pari passu with the amounts constituting the Prepetition Senior Indebtedness.  The Gap Period Financing was authorized on an interim basis by an order of the Court, dated November 20, 2007 (the "**Interim Gap Period Financing Order**"), and on a final basis by further order of the Court dated December 11, 2007 (the "**Final Gap Period Financing Order**" and, together with the Interim Gap Period Financing Order, the "**Gap Period Financing Orders**").  Pursuant to the Gap Period Financing Orders and the Gap Period Financing, (i) the Gap Obligations are secured by the Prepetition Senior Liens and new liens on any and all assets or property (or proceeds thereof) the Company may acquire or receive after the Petition Date, and (ii) the Prepetition Indebtedness (to the extent of any diminution in the value of the Prepetition Collateral (as defined below) is secured by replacement liens on any and all assets or property (or proceeds thereof) the Company had, acquired or received prior to the Petition Date or may acquire or receive on or after the Petition Date (excluding claims for relief arising under chapter 5 of the Bankruptcy Code) (collectively, the Liens described in clauses (i) and (ii) above, the "**Gap Financing Liens**").

9.    All collateral provided under any Prepetition Financing Documents (including the Prepetition Senior Collateral and the Prepetition Junior Collateral) that existed as of the Petition Date and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents and profits thereof shall hereafter be referred to as the "**Prepetition Collateral**."

10.    The Prepetition Financing Documents and the Gap Period Financing Documents are valid and binding agreements and obligations of the Debtors, and the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Prepetition Liens and the Gap Financing Liens (i) constitute valid, binding, enforceable and perfected first priority and second priority (as the case may be) security interests and liens, subject only to the Permitted Liens (as defined in the Prepetition SPA), but only to the extent such Permitted Liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code) and are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which Permitted Liens are senior in priority to the Prepetition Liens and Gap Financing Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements, and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

11.    (i) The Prepetition Indebtedness and the Gap Period Financing constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, (ii) no objection, offset, defense or counterclaim of any kind or nature to the Prepetition Indebtedness or the Gap Period Financing exists and neither the Debtors, any trustee nor the Custodian shall assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability or non-avoidability of any of the Prepetition Indebtedness or the Gap Period Financing and (iii) the Prepetition Indebtedness, the Gap Period Financing, and any amounts previously paid to any Prepetition Lenders on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

12.    The Prepetition Agent (on behalf of the Prepetition Lenders) perfected the security interests and Liens in and on the Prepetition Collateral by the filing of UCC-1 financing statements and other required documents against the Debtors and such collateral with the proper state and county offices for the perfection of such security interests and Liens.

647084.03

1    Subject to the exception specified in Paragraph 43(b) below, the foregoing acknowledgments or

2    agreements by the Debtors (and the Custodian) contained in this Paragraph E with respect to the

3    Prepetition Indebtedness and Prepetition Liens shall be binding on any Committee or any other

4    party.

5        F.        An immediate and critical need exists for the Debtors to obtain funds and use Cash

6    Collateral in order to continue the operation of their businesses.  The use of "cash collateral," as

7    defined by section 363(a) of the Bankruptcy Code and including any and all prepetition and

8    postpetition proceeds of the Prepetition Collateral and property subject to the Gap Financing Liens

9    ("**Cash Collateral**"), alone would be insufficient to meet the Debtors' immediate postpetition

10   liquidity needs.  The Debtors are unable to obtain the required funds (i) in the forms of (w)

11   unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (x) an

12   administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (y) unsecured debt

13   having the priority afforded by section 364(c)(l) of the Bankruptcy Code or (z) debt secured only as

14   described in section 364(c)(2) or (3) of the Bankruptcy Code or (ii) on terms more favorable than

15   those offered by the Postpetition Lenders under the Postpetition Credit Agreement, this Order, the

16   Final Order and all other agreements, documents, notes, instruments, certificates, exhibits or

17   schedules delivered pursuant hereto or thereto or in connection herewith or therewith, including,

18   without limitation, the DIP Budget (as defined in the Postpetition Credit Agreement) (collectively

19   with the Postpetition Credit Agreement, this Order and the Final Order, the "**Postpetition Financing**

20   **Documents**").

21       G.        The Debtors have requested that, pursuant to the terms of the Postpetition Financing

22   Documents, the Postpetition Lenders make loans to the Debtors and the Prepetition Lenders and Gap

23   Period Lenders consent to the use of their Cash Collateral, to be used by the Debtors solely in

24   accordance with the terms of the Postpetition Financing Documents.  The ability of the Debtors to

25   continue their business and to realize the benefits of chapter 11 of the Bankruptcy Code depends

26   upon the Debtors obtaining such financing and using such Cash Collateral.  The Postpetition

27   Lenders are willing to make such loans and advances and to provide other financial accommodations

28   on a superpriority and first priority secured basis, as more particularly described herein, pursuant to

647084.03

1    the terms and conditions of the Postpetition Financing Documents. Accordingly, the relief requested

2    in the Motion is necessary, essential and appropriate for the continued operation of the Debtors'

3    business, the management and preservation of their respective assets and properties, and is in the

4    best interests of the Debtors, their estates and creditors. The financing provided to the Debtors and

5    the Guarantors that are not Debtors under the Postpetition Financing Documents will provide each

6    of them substantial benefits that are essential to their continued operations and will enable each to

7    maximize their enterprise values. Without such financing, the Debtors and Guarantors will be

8    unable to continue to operate.

9        H.        Based on the record before the Court, (i) the terms of the use of the Prepetition

10    Lenders' Cash Collateral as provided in this Order and (ii) the terms of the Postpetition Financing

11    Documents, pursuant to which the postpetition loans will be made to the Debtors by the Postpetition

12    Lenders, have been negotiated at arms' length and in "good faith," as that term is used in section

13    364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and

14    creditors. The Postpetition Lenders are extending financing to the Debtors, and the Prepetition

15    Lenders and Gap Period Lenders are permitting the use of their Cash Collateral, in good faith, and

16    the Postpetition Lenders are entitled to the benefits of the provisions of section 364(e) of the

17    Bankruptcy Code.

18        I.        It is in the best interests of the Debtors' estates that they be allowed to finance their

19    operations and use Cash Collateral under the terms and conditions set forth herein and in the

20    Postpetition Financing Documents. The relief requested by the Motion is necessary to avoid harm

21    to the Debtors' estates, and good, adequate and sufficient cause has been shown to justify the

22    granting of the relief requested herein, and the immediate entry of this Order.

23        J.        The Prepetition Lenders and the Gap Period Lenders have consented to the Debtors'

24    use of the Cash Collateral and the granting of the Postpetition Liens (as hereinafter defined) in the

25    Collateral solely on the terms and conditions set forth in this Order. The adequate protection

26    provided herein and other benefits and privileges contained herein are consistent with and

27    authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-

28    objection of such parties.

647084.03

1       K.       It is in the best interests of the Debtors and their estates that Thomas Lumsden, or a

2   successor reasonably acceptable to the Requisite Lenders, be at all times (so long as there are any

3   obligations owed on the Postpetition Credit Agreement or any outstanding Gap Period Indebtedness

4   or Prepetition Indebtedness) retained as the Debtors' Chief Restructuring Officer (and, during the

5   pendency of the Delaware Proceeding, be retained as the Custodian), in each case reporting directly

6   to Solidus's board of directors.  The Postpetition Credit Agreement provides that it will be an Event

7   of Default under that agreement if the Debtors fail to retain Mr. Lumsden, or a successor reasonably

8   acceptable to the Requisite Lenders, as the Debtors' Chief Restructuring Officer (and, during the

9   pendency of the Delaware Proceeding, the Custodian).

10       L.       Notice of the Motion, and the hearing with respect thereto was delivered on

11   December 14, 2007, as set forth in the certificates of service filed by the Debtors, to (a) the Office of

12   the United States Trustee for the Central District of California; (b) the Internal Revenue Service;

13   (c) the Franchise Tax Board for the State of California; (d) the Employment Development

14   Department for the State of California; (d) counsel to the Prepetition Lenders, Gap Period Lenders,

15   and Postpetition Lenders; (e) counsel to the parties who filed the involuntary petition against

16   Solidus; (f) all parties having filed a request for special notice pursuant to Bankruptcy Rule 2002(i)

17   following the filing of the involuntary petition; and (g) the creditors identified on the list of creditors

18   holding the thirty (30) largest unsecured claims against the Debtors on a consolidated basis

19   (collectively, the "Interim Notice Parties").  Given the nature of the relief sought in the Motion and

20   the facts and circumstances of the Chapter 11 Cases (including the Debtors' immediate and critical

21   need to obtain financing and to use Cash Collateral), such notice constitutes sufficient and adequate

22   notice of this Order pursuant to Bankruptcy Rules 2002, 4001(c) and (d) and 9014 and section

23   102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(c) of the Bankruptcy Code,

24   and no further notice of the Motion or this Order is necessary or required.

25       **NOW, THEREFORE, IT IS HEREBY ORDERED**:

26       1.       The Motion is granted in all respects.  Any objections to the relief sought in the

27   Motion that have not been previously resolved or withdrawn are hereby overruled on their merits or,

28

HENNIGAN, BENNETT & DORMAN LLP

647084.03

1  to the extent applicable, deferred until the hearing on the Final Order. This Order shall become

2  effective immediately upon its entry.

3    2.    The Debtors are hereby (i) authorized to enter into the Postpetition Credit Agreement,

4  substantially in the form filed with the Court, and the other Postpetition Financing Documents and

5  (ii) authorized to borrow funds, incur debt, and other obligations, grant Liens, make deposits,

6  provide indemnities and perform their obligations solely in accordance with the terms and

7  conditions of the Postpetition Financing Documents. Prior to entry of the Final Order, the

8  Postpetition Financing Documents may be amended, modified, supplemented or the provisions

9  thereof waived in accordance with their terms, without further order of this Court or notice to any

10  party; provided, however, that any material amendment, modification, or supplement shall only be

11  permitted pursuant to an order of this Court on noticed motion. All obligations owed to any of the

12  Postpetition Lenders under or in connection with the Postpetition Financing Documents, including,

13  without limitation, all Obligations and Guaranteed Obligations (as each such term is defined in the

14  Postpetition Credit Agreement), loans, advances and other indebtedness, obligations and amounts

15  (contingent or otherwise) owing from time to time under or in connection with the Postpetition

16  Financing Documents, and any and all other obligations at any time incurred by any of the Debtors

17  to any of the Postpetition Lenders, are defined and referred to herein as the "**Postpetition**

18  **Obligations**."

19    3.    Subject to the terms and conditions set forth in this Order, the Debtors are authorized,

20  pursuant to section 363(c)(2) of the Bankruptcy Code, to use the Prepetition Lenders' and Gap

21  Period Lenders' Cash Collateral for the period of time from the date hereof until the occurrence of a

22  "**Termination Event**", which shall mean the earliest date on which any of the following shall occur:

23  (i) the earlier of the occurrence of (x) the Maturity Date, or (y) the occurrence of an Event of Default

24  that is not cured or waived in the manner set forth in the Postpetition Financing Documents within

25  five business days, (ii) this Order or the Final Order ceases to be in full force and effect, (iii) the

26  entry of any order of the Court that materially impairs the security interests, claim priorities, rights

27  or protections granted to the Prepetition Agent, the Prepetition Lenders or the Gap Period Lenders

28  pursuant to the Prepetition Financing Documents, the Gap Period Financing Documents or this

647084.03

1    Order; (iv) the date on which any Cash Collateral is not expended in accordance with the provisions

2    of this Order, the DIP Budget (as in effect on the date hereof) or the Postpetition Credit Agreement

3    (as in effect on the date hereof), (v) the conversion of the Debtors' Chapter 11 Cases to cases under

4    chapter 7 of the Bankruptcy Code, or (vi) the appointment or election of a trustee in the Debtors'

5    bankruptcy cases.

6        4.      The Postpetition Financing Documents shall constitute valid and binding obligations

7    of the Debtors, enforceable against the Debtors in accordance with their terms; provided, however,

8    that notwithstanding any other provision of this Order or of the other Postpetition Financing

9    Documents, the Debtors shall not, prior to entry of a final order approving the Postpetition

10    Financing Documents (the "**Final Order**"), incur Postpetition Obligations in the principal amount of

11    more than the amounts set forth in the DIP Budget through the entry of the Final Order.  No

12    obligation, payment, transfer or grant of security under this Order or the other Postpetition

13    Financing Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy

14    Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment

15    or counterclaim.

16        5.      The Debtors shall use Cash Collateral and the loans or advances made under or in

17    connection with the Postpetition Financing Documents solely as provided in this Order and in the

18    other Postpetition Financing Documents.  From and after the Petition Date, amounts loaned and

19    advanced under or in connection with the Postpetition Financing Documents and all proceeds of

20    Collateral, including, without limitation, all of the Debtors' existing or future cash and Cash

21    Collateral (collectively, "**Lender Funds**"), shall not, directly or indirectly, be used to pay expenses

22    of the Debtors or otherwise disbursed except for those expenses and/or disbursements that are

23    expressly permitted under the Postpetition Financing Documents and any DIP Budget approved by

24    the Postpetition Lenders (as the DIP Budget may be extended, varied, supplemented or otherwise

25    modified in accordance with the provisions of the Postpetition Financing Documents), including any

26    advances as set forth in the DIP Budget made to Guarantors who are not Debtors.  The Debtors shall

27    not use, nor shall any of them permit any of their subsidiaries or affiliated entities to use, any Lender

28    Funds or any other funds available to the Debtors and any of their subsidiaries or affiliated entities

HENNIGAN, BENNETT & DORMAN LLP
LOS ANGELES, CALIFORNIA

-12-

647084.03

*AND IT BEING FURTHER UNDERSTOOD THAT ANY AGGREGATE VARIANCE ALLOWED IN THE PRECEDING CLAUSE MAY BE ALLOCATED AMONG THE LINE ITEMS IN THE DIP BUDGET ACCORDING TO THE DEBTORS' DISCRETION,*

1 ~~except in the amounts and provided~~ for in the DIP Budget; it being understood that for any week

2 beginning on the dates set forth in the DIP Budget, the Debtors' cumulative Operating

3 Disbursements shall not exceed the aggregate amount provided for in the DIP Budget (i) by 110%

4 up to and including the date which is four weeks following the Closing Date, and (ii) thereafter, by

5 105%, in each case of the cumulative amount thereof set forth in the DIP Budget for such period. *2-80*

6 The DIP Budget shall not be modified or otherwise amended without the consent of the Requisite

7 Lenders.

8       6.     The DIP Budget shall include budgeted line item amounts for the compensation and

9 reimbursement of fees and expenses payable pursuant to sections 330 or 331 of the Bankruptcy

10 Code and awarded by this Court to attorneys, accountants, investment bankers, financial advisors or

11 other professional persons retained by the Debtors or any Committee(s) pursuant to an order of this

12 Court, and the Debtors shall not be authorized to pay any amount in excess of the allowed amount

13 set forth in the DIP Budget, up to the maximum amount provided in this Order, determined on a

14 cumulative basis (meaning that any budgeted amounts in excess of actual compensation and

15 reimbursement for any particular period are carried forward and added to the budgeted amounts in

16 the next applicable period); provided, however, that the foregoing shall not be construed as consent

17 to the allowance of any of the amounts referred to in the preceding clause and shall not affect the

18 right of any party in interest to object to the allowance and payment of any such amounts.  No

19 administrative claims, including fees and expenses of professionals, shall be assessed against or

20 attributed to any of the Postpetition Lenders, Gap Period Lenders or Prepetition Lenders with

21 respect to their interests in the Collateral and/or Prepetition Collateral, as applicable, pursuant to the

22 provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the

23 Debtors, without the prior written consent of the Postpetition Lenders, Gap Period Lenders and/or

24 the Prepetition Lenders, as applicable, and no such consent shall be implied from any action,

25 inaction or acquiescence by, either with or without notice to, the Postpetition Lenders, Gap Period

26 Lenders or Prepetition Lenders, or otherwise.

27       7.     Notwithstanding anything herein to the contrary, no Lender Funds may be used

28 directly or indirectly by the Debtors, any Committee or any other person or entity to (i) object to or

HENNIGAN, BENNETT & DORMAN LLP
LOS ANGELES, CALIFORNIA

647084.03

1    contest in any manner the Postpetition Obligations, the Postpetition Liens, the Prepetition

2    Indebtedness, the Prepetition Liens, the Gap Period Financing or the Gap Financing Liens or to

3    assert or prosecute any actions, claims or causes of action (including, without limitation, any claims

4    or causes of action under chapter 5 of the Bankruptcy Code) against any of the Postpetition Lenders,

5    Gap Period Lenders or Prepetition Lenders, (ii) take any action prohibited under the Postpetition

6    Credit Agreement, this Order, or the Gap Period Financing Orders, or (iii) seek authorization for any

7    party to use any of the Cash Collateral of the Postpetition Lenders without the consent of the

8    Postpetition Lenders as well as the Gap Period Lenders or the Prepetition Lenders, as applicable, or

9    to obtain Liens that are senior to, or on a parity with the Liens of the Postpetition Lenders in the

10   Collateral or any portion thereof.

11         8.      Notwithstanding anything herein to the contrary, for so long as the Debtors are

12   authorized to use the Prepetition Lenders' and Gap Period Lenders' Cash Collateral, no Lender

13   Funds and no Cash Collateral of the Prepetition Lenders or Gap Period Lenders may be used directly

14   or indirectly by the Debtors, any Committee or any other person or entity to object to or contest in

15   any manner (other than to investigate) the Prepetition Indebtedness or Prepetition Liens, or to assert

16   or prosecute any actions, claims or causes of action (including, without limitation, any claims or

17   causes of action under chapter 5 of the Bankruptcy Code) against any of the Prepetition Lenders or

18   Gap Period Lenders without the consent of the applicable Prepetition Lenders or Gap Period

19   Lenders.

20         9.      In addition to complying with all provisions of the Postpetition Financing Documents

21   relating to the establishment and maintenance of Control Accounts (as defined in the Postpetition

22   Credit Agreement) and Approved Deposit Accounts (as defined in the Postpetition Credit

23   Agreement), the Debtors are hereby authorized and directed to enter into any additional agreements

24   providing for the establishment of lock boxes, blocked accounts or similar arrangements requested

25   by the Postpetition Agent (or other banks or financial institutions acceptable to the Postpetition

26   Agent) for the benefit and in favor of the Postpetition Lenders for purposes of facilitating cash

27   collections from the Debtors in accordance with the terms of the Postpetition Financing Documents.

28

647084.03

10. Interest on the Postpetition Obligations shall accrue at the rates (including any default rates) and shall be paid at the times as provided in the Postpetition Financing Documents.

11. Any and all fees and expenses paid or required to be paid in connection with the Postpetition Financing Documents are hereby authorized and shall be paid in accordance with the terms and provisions of the Postpetition Financing Documents.

12. All Postpetition Obligations hereby constitute under section 364(c)(1) of the Bankruptcy Code allowed superpriority administrative expense claims against the Debtors (subject only to the Carve-Out (as defined below) and, pursuant to the provisions of Paragraph 34 herein as to the relative priority of such superpriority administrative expense claims given to the Postpetition Lenders, Prepetition Lenders and Gap Period Lenders (and giving effect to the relative priority as between the Prepetition Senior Lenders, Gap Period Lenders and the remaining Prepetition Lenders)) having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), which superpriority claims shall, subject to the Carve-Out, be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including, upon entry of the Final Order, the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code) and shall not be subject or subordinate to any offset, defense, counterclaim, avoidance, or subordination pursuant to the Bankruptcy Code or any other applicable law or any Lien that is avoided and preserved for the benefit of the Debtors and/or their estates under chapter 5 of the Bankruptcy Code.

13. As security for the Postpetition Obligations, the Postpetition Agent is hereby granted pursuant to section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code for the sole benefit of the Postpetition Lenders valid, binding, enforceable, first priority and perfected Liens (the "**Postpetition Liens**") in the Collateral (which includes, without limitation, upon entry of the Final Order, the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code and shall not be subject

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

647084.03

1  or subordinate to any offset, defense, counterclaim, avoidance, or subordination pursuant to the

2  Bankruptcy Code or any other applicable law or any Lien that is avoided and preserved for the

3  benefit of the Debtors and/or their estates under chapter 5 of the Bankruptcy Code), which Liens are

4  subject only to (x) the Carve-Out, (y) non-avoidable, valid, enforceable and perfected Liens that are

5  in existence on the Petition Date and that secure debt other than the Prepetition Indebtedness or the

6  Gap Obligations, and (z) non-avoidable, valid, enforceable Liens that are in existence on the Petition

7  Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the

8  Bankruptcy Code (Liens specified in this clause (z) and the immediately preceding clause (y) are

9  hereinafter referred to as the "**Existing Liens**"); provided, however, that for the avoidance of doubt

10 and without limiting the foregoing, the Postpetition Liens shall, except as expressly provided herein,

11 be in all respects senior in rank and priority to any and all Liens securing any Prepetition

12 Indebtedness and Gap Period Financing, including, without limitation, any and all Liens granted

13 hereunder as adequate protection in connection with such obligations, the Liens granted under the

14 Gap Period Financing Orders to secure the Gap Period Financing, and any other Liens other than the

15 Existing Liens.  The term "**Collateral**" shall include all prepetition and postpetition assets and

16 properties (tangible, intangible, real, personal and mixed) of the Debtors of any kind or nature,

17 whether now existing or newly acquired or arising, and wherever located, including, without

18 limitation, all accounts, accounts receivable, chattel paper, electronic chattel paper, inventory,

19 machinery, equipment, contract rights, documents, goods, fixtures, intellectual property and other

20 general intangibles, intercompany notes, investment property, owned and leased real property,

21 vehicles, instruments, letters of credit, letter of credit rights, commercial tort claims, causes of

22 action, cash, deposit accounts, securities, securities accounts, books and records and all proceeds

23 (including, without limitation, upon entry of the Final Order, proceeds of any avoidance actions

24 under chapter 5 of the Bankruptcy Code) and products of all of the foregoing; provided, however,

25 that the Collateral  shall not include causes of action under Bankruptcy Code sections 544, 545, 547,

26 548, 550 or 551 (but upon entry of the Final Order will include proceeds of such causes of action).

27 For the avoidance of doubt, the term "Collateral" shall include 100% of the Capital Stock of (i) each

28 Guarantor, and (ii) all subsidiaries and joint ventures of Solidus and each Guarantor (to the extent

; PROVIDED THAT FAILURE OF THE COURT TO GRANT LIENS ON AVOIDANCE
ACTIONS IN THE FINAL ORDER WILL 16 NOT CONSTITUTE A DEFAULT UNDER
THE POSTPETITION FINANCING DOCUMENTS

230

647084.03

1    not already included in the immediately preceding clauses (i) or (ii)), in each case to the extent such

2    Capital Stock is property of the Debtors.  In addition, the Company and the Debtors shall cause the

3    applicable non-Debtor subsidiaries to grant liens on all of their assets, as provided for the in

4    Postpetition Financing Documents, as security for the Postpetition Obligations.

5          14.    Subject to the Carve-Out, the Postpetition Liens shall not be (i) subject to any Lien

6    that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the

7    Bankruptcy Code or (ii) subordinated to or made pari passu with any other Lien under section

8    364(d) of the Bankruptcy Code or otherwise other than as expressly provided herein.  No claim or

9    Lien having a priority superior to or pari passu with those granted by this Order with respect to the

10    Postpetition Obligations shall be granted or allowed until the indefeasible payment in full in cash

11    and satisfaction in the manner provided in the Postpetition Financing Documents of the Postpetition

12    Obligations.

13          15.    To the extent unencumbered funds are not available to pay allowed administrative

14    expenses in full, the claims granted hereunder to the Postpetition Lenders, the Postpetition Liens

15    granted hereunder and any claims or Liens ranking pari passu with or junior in priority to such

16    claims of the Postpetition Lenders and the Postpetition Liens shall be subject to payment of the

17    Carve-Out.  As used in this Order, "**Carve-Out**" means (i) the unpaid fees of the Clerk of the

18    Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) the aggregate unpaid

19    and allowed fees and expenses payable under Bankruptcy Code sections 330 and 331 to professional

20    persons retained pursuant to an order of the Court (the "**Professional Persons**") by the Debtors in an

21    aggregate amount not to exceed the lesser of (a) $3,170,000 less any amounts actually paid to such

22    Professional Persons after the Consent Date, or (b) the actual and reasonable fees and expenses of

23    such Professional Persons that are allowed by final order of the Court (the "**Final Fee Order**"), and

24    (iii) the aggregate unpaid and allowed fees and expenses payable under Bankruptcy Code sections

25    330 and 331 to Professional Persons retained pursuant to an order of the Court by any Committee

26    not to exceed the lesser of (a) $660,000 less any amounts actually paid to such Professional Persons

27    after the Consent Date, or (b) the actual and reasonable expenses of such Professional Persons that

28    are allowed by Final Fee Order of the Court; provided, however, that the Carve-Out shall not

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

647084.03

1    include, apply to or be available for (a) any success fee or similar payment to any professionals or

2    other persons payable in connection with a restructuring or asset disposition with respect to the

3    Debtors or otherwise, or (b) any fees or expenses incurred by any party, including the Debtors or

4    any Committee, or its respective professionals in connection with, or relating to, the initiation or

5    prosecution (but, in the case of any Committee, not the investigation) of any claims, causes of

6    action, adversary proceedings or other litigation against any of the Postpetition Lenders, the Gap

7    Period Lenders or the Prepetition Lenders, including, without limitation, challenging the amount,

8    validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to,

9    the Postpetition Obligations, the Postpetition Liens, the Gap Period Financing, the Gap Financing

10   Liens, the Prepetition Indebtedness or the Prepetition Liens.  So long as no Event of Default shall

11   have occurred and be continuing, the Debtors shall be permitted to pay compensation and

12   reimbursement of expenses allowed and payable under Bankruptcy Code sections 330 and 331, as

13   the same may be due and payable, up to the amount of the Carve-Out and as set forth in the DIP

14   Budget.  The balance of all prepetition retainers held by Professional Persons on the Consent Date

15   (after deducting for compensation earned and expenses incurred through that date) in an aggregate

16   amount in excess of $100,000 shall count against, and shall permanently reduce, the Carve Out.

17   Nothing herein shall be construed to impair the ability of any party in interest to object to any fees,

18   expenses, reimbursement or compensation of any professionals.

19        16.    Notwithstanding anything herein to the contrary, the entry of this Order is without

20   prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any

21   of the rights of any of the Postpetition Lenders, Gap Period Lenders or Prepetition Lenders under the

22   Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the

23   Postpetition Lenders, Gap Period Lenders or Prepetition Lenders to (i) request modification or

24   vacation of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the

25   Chapter 11 Cases, conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy

26   Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers) or

27   (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or

28   plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of

-18-

647084.03

1  the Postpetition Lenders, Gap Period Lenders, or the Prepetition Lenders, including without

2  limitation all objection rights.

3        17.    Notwithstanding anything herein or in the other Postpetition Financing Documents,

4  on the date of a Termination Event, the Debtors shall no longer, pursuant to this Order, the other

5  Postpetition Financing Documents or otherwise, be authorized to borrow funds or incur

6  indebtedness hereunder or under the other Postpetition Financing Documents or to use any proceeds

7  of the Postpetition Obligations already received (and any obligations of the Postpetition Lenders to

8  make loans hereunder or under the other Postpetition Financing Documents automatically shall be

9  terminated).

10        18.    Notwithstanding anything herein or the occurrence of a Termination Event, all of the

11  rights, remedies, benefits and protections provided (i) to the Postpetition Lenders under this Order

12  and the other Postpetition Financing Documents and (ii) to the Gap Period Lenders and the

13  Prepetition Lenders under this Order and the Gap Period Financing Orders, shall survive such

14  Termination Event.  Upon such Termination Event, the principal of and all accrued interest and fees

15  and all other Postpetition Obligations, shall be immediately due and payable (if and to the extent not

16  already declared due and payable in accordance with the Postpetition Financing Documents or

17  Prepetition Financing Documents, as applicable) and the Postpetition Lenders, Gap Period Lenders,

18  and Prepetition Lenders shall have all other rights and remedies provided in this Order, the other

19  Postpetition Financing Documents, the Gap Period Financing Documents, the Prepetition Financing

20  Documents (as applicable) and applicable law.

21        19.    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby

22  vacated and modified to the extent necessary to permit the Postpetition Lenders to exercise, upon the

23  occurrence and during the continuation of any Event of Default (as defined in the Postpetition Credit

24  Agreement), all rights and remedies provided for in the Postpetition Financing Documents, and to

25  take any or all of the following actions without further order of or application to this Court:

26  (a) terminate the Debtors' use of Cash Collateral and cease to make any loans to the Debtors (if not

27  already terminated in accordance with Paragraph 3 above); (b) declare all Postpetition Obligations to

28  be immediately due and payable (if not already accelerated as provided herein and in the

647084.03

1   Postpetition Credit Agreement); (c) terminate the commitments under the Postpetition Credit

2   Agreement; (d) accrue interest at the applicable default rate; (e) set off and apply immediately any

3   and all amounts in accounts maintained by the Debtors with any Postpetition Lenders against the

4   Postpetition Obligations, and otherwise enforce rights against the Collateral in the possession of any

5   of the Postpetition Lenders for application towards the Postpetition Obligations; and (f) take any

6   other actions or exercise any other rights or remedies permitted under this Order, the other

7   Postpetition Financing Documents or applicable law to effect the repayment and satisfaction of the

8   Postpetition Obligations; provided, however, that the Postpetition Lenders, acting through collective

9   action at the direction of the Requisite Lenders, shall provide five (5) business days written notice

10  (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors,

11  counsel to the Prepetition Agent, counsel to any Committee, and counsel to Whorl, LLC prior to

12  exercising any enforcement rights or remedies in respect of the Collateral (other than the rights

13  described in clauses (a), (b), (c), and (d) above (to the extent they might be deemed remedies in

14  respect of the Collateral) and other than with respect to freezing any deposit accounts or securities

15  accounts (but not setting off or applying such amounts therein against any Postpetition Obligations).

16  The rights and remedies of the Postpetition Lenders specified herein are cumulative and not

17  exclusive of any rights or remedies that the Postpetition Lenders may have under the other

18  Postpetition Financing Documents or otherwise.

19          20.     Notwithstanding anything to the contrary (whether herein or in any other Order or

20  agreement, including without limitation the Gap Period Financing Orders), (A) neither the Gap

21  Period Lenders with respect to Gap Obligations nor the Prepetition Lenders with respect to the

22  Guarantees by Guarantors that are not Debtors may exercise rights or remedies under the Guarantee

23  (except as set forth in Paragraphs 3 and 16 hereof), and (B) the automatic stay provisions of section

24  362 of the Bankruptcy Code shall not be vacated or modified with respect to the Prepetition

25  Indebtedness or the Gap Period Financing, until the earlier of (x) the Maturity Date, and (y) the

26  occurrence of an Event of Default (as defined in the Postpetition Credit Agreement), as to which

27  (i) the Requisite Lenders have not waived such Event of Default or agreed to forbear from

28  exercising remedies concerning such Event of Default and (ii) the Postpetition Lenders have started

1  to exercise remedies pertaining to such Event of Default, in which case the Prepetition Lenders and

2  Gap Period Lenders may exercise, all rights and remedies provided for in the Prepetition Financing

3  Documents or the Gap Period Financing Documents, as applicable, with respect to an Event of

4  Default (as defined in the respective Prepetition Financing or Gap Period Financing Documents),

5  and to take any or all of the following actions without further order of or application to this Court:

6  (a) terminate their consent to the Debtors' use of Cash Collateral; and (b) take any other action or

7  exercise any other rights or remedies permitted under the  Gap Period Financing Orders, the Gap

8  Period Financing Documents or the Prepetition Financing Documents or applicable law to effect the

9  repayment and satisfaction of the Prepetition Obligations or the Gap Period Funding; provided,

10  however, that any Required Holders (as such term is used in the Interim Gap Period Financing

11  Order) or Gap Period Lenders shall provide five (5) business days written notice (by facsimile,

12  telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors, counsel to the

13  Prepetition Agent, counsel to any Committee, and counsel to Whorl, LLC prior to exercising any

14  enforcement rights or remedies in respect of the Collateral (other than the rights described in clause

15  (a) above (to the extent they might be deemed remedies in respect of the Collateral) and other than

16  with respect to freezing any deposit accounts or securities accounts (but not setting off or applying

17  amounts therein against any Gap Period Obligations or Prepetition Obligations)).  The rights and

18  remedies of the Prepetition Lenders and the Gap Period Lenders specified herein are cumulative and

19  not exclusive of any rights or remedies that the Prepetition Lenders or Gap Period Lenders may have

20  under the other Prepetition Financing Documents or Gap Period Financing Documents or otherwise.

21          21.      If the Postpetition Lenders shall at any time exercise any of their respective rights and

22  remedies hereunder, under the other Postpetition Financing Documents or under applicable law, in

23  order to effect payment or satisfaction of the Postpetition Obligations or to receive any amounts or

24  remittances due hereunder or under the other Postpetition Financing Documents, including without

25  limitation, foreclosing upon and selling all or a portion of the Collateral, the Postpetition Lenders

26  shall have the right without any further action or approval of this Court to exercise such rights and

27  remedies as to all or such part of the Collateral as the Postpetition Lenders shall elect in their sole

28  discretion, subject to the provision by the applicable Postpetition Lenders of the written notice as

647084.03

1  provided herein.  No holder of a Lien primed by this Order or granted by the Debtors as adequate

2  protection shall be entitled to (i) object on the basis of the existence of any such Lien to the exercise

3  by the Postpetition Lenders of their respective rights and remedies under the Postpetition Financing

4  Documents or under applicable law to effect satisfaction of the Postpetition Obligations or to receive

5  any amounts or remittances due hereunder or under the other Postpetition Financing Documents or

6  (ii) otherwise interfere with the exercise of rights under the Postpetition Financing Documents by

7  the Postpetition Lenders as a result of any such Lien.  The Postpetition Lenders shall be entitled to

8  apply the payments or proceeds of the Collateral in accordance with the provisions of this Order and

9  the other Postpetition Financing Documents, and in no event shall any of the Postpetition Lenders be

10  subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of

11  the Collateral or otherwise.

12      22.    The failure or delay by any (i) Postpetition Lender to seek relief or otherwise exercise

13  its rights and remedies under this Order or any other Postpetition Financing Documents or

14  (ii) Prepetition Lender or Gap Period Lender to exercise its rights and remedies under this Order

15  shall not constitute a waiver of any of the rights of such Postpetition Lender, Gap Period Lender or

16  Prepetition Lender hereunder, thereunder or otherwise, and any single or partial exercise of such

17  rights and remedies against any Credit Party or Collateral shall not be construed to limit any further

18  exercise of such rights and remedies against any or all of the other Credit Parties and/or Collateral.

19      23.    The Debtors shall be enjoined and prohibited from at any time during the Chapter 11

20  Cases granting any Lien having a priority superior to or pari passu with the Liens in the Collateral or

21  any portion thereof in favor of the Prepetition Lenders, the Gap Period Lenders, or the Postpetition

22  Lenders, whether pursuant to sections 364(d), 503(b) or 507(b) of the Bankruptcy Code or

23  otherwise.  The Debtors shall be enjoined and prohibited from at any time using the Collateral or

24  Lender Funds except pursuant to the terms and conditions of this Order and the other Postpetition

25  Financing Documents.

26      24.    The Debtors shall execute and deliver to the Postpetition Lenders all such

27  agreements, financing statements, instruments and other documents as the Postpetition Agent or any

28

-22-

647084.03

1   of the Postpetition Lenders may reasonably request to evidence, confirm, validate or perfect the

2   Liens granted pursuant hereto.

3       25.      Without limiting the rights of access and information afforded to the Postpetition

4   Agent and the Postpetition Lenders under the Postpetition Financing Documents, the Debtors, upon

5   reasonable written notice and at such reasonable times during normal business hours and as often as

6   may reasonably be requested (and, after an Event of Default (as defined in the Postpetition Credit

7   Agreement) has occurred and is continuing, upon notice and at times that are not limited to normal

8   business hours), shall permit any representatives designated by the Postpetition Agent or any

9   Postpetition Lender to visit and inspect any of their properties, to inspect, copy and take extracts

10  from their financial and accounting records and to discuss their affairs, finances and accounts with

11  their officers and independent public accountants.

12      26.      All Liens granted herein and in the other Postpetition Financing Documents to or for

13  the benefit of the Postpetition Lenders or Postpetition Agent shall pursuant to this Order be, and they

14  hereby are, valid, enforceable and perfected, effective as of the Petition Date, and (notwithstanding

15  any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other

16  relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required

17  to effect such perfection, and all Liens on the Approved Deposit Accounts (as defined in the

18  Postpetition Credit Agreement), the Control Accounts (as defined in the Postpetition Credit

19  Agreement) and any other deposit accounts or securities accounts shall, pursuant to this Order be,

20  and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of

21  the New York, Delaware and California Uniform Commercial Code as in effect as of the date hereof

22  in favor of the Postpetition Lenders or Postpetition Agent; provided, however, that if the

23  Postpetition Agent shall, in its sole discretion, choose to require the execution of and/or file (as

24  applicable) such mortgages, financing statements, notices of Liens and other similar instruments and

25  documents, all such mortgages, financing statements, notices of Liens or other similar instruments

26  and documents shall be deemed to have been executed, filed and/or recorded nunc pro tunc at the

27  time and on the date of the Petition Date. Each and every federal, state and local government

28  agency or department may accept the entry by this Court of this Order as evidence of the validity,

-23-

647084.03

1   enforceability and perfection on the Petition Date of the Liens granted herein and in the other

2   Postpetition Financing Documents to or for the benefit of the Postpetition Lenders or Postpetition

3   Agent.

4         27.     The provisions of this Order shall be binding upon and inure to the benefit of each of

5   the Postpetition Agent, Postpetition Lenders, Gap Period Lenders, Prepetition Agent, Prepetition

6   Lenders and Debtors and their respective successors and assigns (including any chapter 7 trustee or

7   other trustee or fiduciary hereafter appointed as a legal representative of the Debtors, or any of them,

8   or with respect to the property of the estate of any or all of the Debtors).

9         28.     Based on the findings set forth in this Order and in accordance with section 364(e) of

10   the Bankruptcy Code, which is applicable to the Interim Facility contemplated by this Order, in the

11   event that any or all of the provisions of this Order or any other Postpetition Financing Documents

12   are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such

13   modification, amendment or vacation shall affect the validity, enforceability or priority of any Lien

14   or claim authorized or created hereby or thereby or any Postpetition Obligations incurred hereunder

15   or thereunder.  Notwithstanding any such modification, amendment or vacation, any Postpetition

16   Obligations incurred and any claim granted to the Postpetition Lenders hereunder or under the other

17   Postpetition Financing Documents arising prior to the effective date of such modification,

18   amendment or vacation shall be governed in all respects by the original provisions of this Order and

19   the other Postpetition Financing Documents, and the Postpetition Lenders shall be entitled to all of

20   the rights, remedies, privileges and benefits, including the Liens and priorities granted herein and

21   therein, with respect to any such Postpetition Obligations and claim.

22         29.     The validity, enforceability, priority or amount of any of the Claims and Liens

23   granted to or for the benefit of the Postpetition Lenders or Postpetition Agent, as the case may be,

24   under this Order or any other postpetition financing documents shall not be affected by any finding

25   or Order of this Court or any other court regarding any prepetition indebtedness or prepetition liens,

26   including without limitation any order of this Court or any other Court invalidating the Prepetition

27   Indebtedness or Prepetition Liens.

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

647084.03

30.    The Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and shall pay fees and expenses that may be required or necessary for the Debtors' performance under or in furtherance of the Postpetition Financing Documents, including, without limitation, (i) the execution of the Postpetition Financing Documents and (ii) the payment of the fees, indemnification obligations and other expenses described or provided in the Postpetition Financing Documents as such become due, including, without limitation, agent fees, and attorneys', financial advisers' and accountants' fees and disbursements as provided for in the Postpetition Financing Documents.  None of such attorneys', financial advisers' and accountants' fees and disbursements shall be subject to the approval of this Court or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Notwithstanding the foregoing, the Debtors shall, promptly after payment of invoices for any such fees and disbursements, provide copies of same to the U.S. Trustee and counsel for any Committee.  In addition, subject to entry of a Final Order so providing, the Debtors are hereby authorized and directed to indemnify the Postpetition Agent and the Postpetition Lenders against any liability arising in connection with the Postpetition Obligations and the Postpetition Financing Documents to the extent provided in the Postpetition Financing Documents.  All such fees, expenses and indemnities of the Postpetition Agent and the Postpetition Lenders shall constitute Postpetition Obligations and shall be secured by the Postpetition Liens and afforded all of the priorities and protections afforded to the Postpetition Obligations under this Order and the other Postpetition Financing Documents.

31.    The obligations of the Debtors in respect of the Postpetition Obligations, and the claims and Liens granted to or for the benefit of the Postpetition Lenders or Postpetition Agent pursuant to this Order and the other Postpetition Financing Documents, shall not be discharged by the entry of an order (a) confirming a chapter 11 plan in the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge) or (b) converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  Under no

647084.03

1   circumstances shall any chapter 11 plan in the Chapter 11 Cases be confirmed or become effective

2   unless such plan is approved by Requisite Lenders or provides that the Postpetition Obligations and

3   the Gap Obligations shall be paid in full in cash on or before the effective date of such plan.

4         32.     Until all obligations and indebtedness owing to the Postpetition Lenders and the Gap

5   Period Lenders shall have been indefeasibly paid in full in cash and satisfied in the manner provided

6   in the Postpetition Financing Documents, or upon the prior written consent of the Requisite Lenders,

7   the Debtors shall not seek an order dismissing the Chapter 11 Cases.  If an order dismissing the

8   Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered,

9   such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that

10  (i) the claims and Liens granted pursuant to this Order to or for the benefit of the Postpetition

11  Lenders or Postpetition Agent shall continue in full force and effect and shall maintain their

12  priorities as provided in this Order until all obligations in respect thereof shall have been

13  indefeasibly paid in full in cash and satisfied in the manner provided in the Postpetition Financing

14  Documents (and that such claims and Liens shall, notwithstanding such dismissal, remain binding

15  on all parties in interest), (ii) the claims and Liens granted pursuant to this Order to or for the benefit

16  of the Prepetition Lenders, the Prepetition Agent and the Gap Period Lenders shall continue in full

17  force and effect and shall maintain their priorities as provided in this Order (and that such claims

18  and Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and

19  (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing

20  such claims and Liens.

21        33.     The provisions of this Order, including the grant of claims and Liens to or for the

22  benefit of the Postpetition Lenders, Postpetition Agent, Gap Period Lenders, Prepetition Lenders and

23  the Prepetition Agent, and any actions taken pursuant hereto shall survive the entry of any order

24  converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

25        34.     Subject in all respects to (i) the Permitted Liens, (ii) the Postpetition Obligations,

26  (iii) the Postpetition Liens (which at all times rank senior to the Prepetition Indebtedness, Prepetition

27  Liens and Gap Financing Liens), (iv) the Carve-Out, and (v) the other terms and provisions of this

28  Order, the Gap Period Lenders and Prepetition Senior Lenders are hereby provided with the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

647084.03

1   following forms of adequate protection (the Gap Period Adequate Protection Liens, Prepetition

2   Senior Lenders Adequate Protection Liens and Prepetition Subordinated Lenders Adequate

3   Protection Liens (each as hereinafter defined), collectively, the "**Adequate Protection Liens**" and

4   the Gap Period Adequate Protection Claims, Prepetition Senior Lenders Adequate Protection Claims

5   and Prepetition Subordinated Lenders Adequate Protection Claims (each as hereinafter defined),

6   collectively, the "**Adequate Protection Claims**"):

7         a.     The Gap Financing Liens granted to the Gap Period Lenders are hereby

8   affirmed (and shall not be diminished by anything herein to the contrary) and the Gap Period

9   Lenders are hereby granted valid, binding, enforceable and perfected continuing replacement

10   liens in all Collateral owned by the other Debtors (collectively, the "**Gap Period Adequate**

11   **Protection Liens**"), subject and junior only to the Postpetition Liens, Postpetition

12   Obligations, Existing Liens (but only to the extent such Existing Liens are senior in priority

13   to the Gap Financing Liens), Permitted Liens and the Carve-Out; provided, however, that the

14   Gap Period Adequate Protection Liens in favor of the Gap Period Lenders shall be pari passu

15   with the Prepetition Senior Lenders Adequate Protection Liens (as hereinafter defined).

16   Except as provided in this Order, the Gap Period Adequate Protection Liens shall not be

17   made subject to or pari passu with any Lien on the Collateral by any order subsequently

18   entered in the Chapter 11 Case.

19         b.     The replacement liens granted to the Prepetition Senior Lenders under the

20   Gap Financing Order are hereby affirmed (and shall not be diminished by anything herein to

21   the contrary) and extended to cover any diminution to the Prepetition Collateral incurred as a

22   result of the Postpetition Obligations and the Prepetition Senior Lenders are hereby granted

23   valid, binding, enforceable and perfected continuing replacement liens in all Collateral

24   owned by the other Debtors (collectively, the "**Prepetition Senior Lenders Adequate**

25   **Protection Liens**"), subject and junior only to the Postpetition Liens, Postpetition

26   Obligations, Existing Liens (but only to the extent such Existing Liens are senior in priority

27   to the Prepetition Senior Liens), Permitted Liens and the Carve-Out; provided, however, that

28   the Prepetition Senior Lenders Adequate Protection Liens in favor of the Prepetition Senior

HENNIGAN, BENNETT & DORMAN LLP

-27-

647084.03

1  Lenders and the Prepetition Agent shall be pari passu with the Gap Period Adequate

2  Protection Liens.  Except as provided in this Order, the Prepetition Senior Lenders Adequate

3  Protection Liens shall not be made subject to or pari passu with any Lien on the Collateral by

4  any order subsequently entered in the Chapter 11 Case.

5        c.        As additional adequate protection of the interests of the Gap Period Lenders

6  in the Collateral, the Gap Period Lenders shall be entitled to allowed super administrative

7  priority claims under section 507(b) of the Bankruptcy Code against all Debtors

8  (collectively, the "**Gap Period Lenders Adequate Protection Claims**") to secure the

9  repayment of all Gap Obligations for any diminution in value of the Collateral (including

10 Cash Collateral) from and after the date of incurrence of the Gap Obligations (the amount of

11 any such diminution to be determined by the Court after notice and the opportunity to be

12 heard).  The Gap Period Lenders Adequate Protection Claims shall have priority over all

13 administrative expenses of the kind specified in, or ordered pursuant to, any provision of the

14 Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to,

15 sections 105, 326, 328, 330, 503(b), 506(c) (subject to entry of the Final Order so providing),

16 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether

17 incurred in the Chapter 11 Cases or any conversion thereof to cases under chapter 7 of the

18 Bankruptcy Code or any other proceeding related hereto or thereto), which Gap Period

19 Lenders Adequate Protection Claims shall be payable from and have recourse to all

20 prepetition and postpetition property of the Debtors and all proceeds thereof (including, upon

21 entry of the Final Order, the proceeds of any avoidance actions under chapter 5 of the

22 Bankruptcy Code), provided, however, that the Gap Period Adequate Protection Liens and

23 Gap Period Lenders Adequate Protection Claims in favor of the Gap Period Lenders shall be

24 subordinate and junior in right of payment and otherwise to the payment in full in cash and

25 satisfaction in the manner provided in the Postpetition Financing Documents of the

26 Postpetition Obligations and to the Carve-Out and provided further that the Gap Period

27 Lenders Adequate Protection  Claims shall be pari passu with the Prepetition Senior Lenders

28 Adequate Protection Claims (as hereinafter defined).

647084.03

d.     As additional adequate protection of the interests of the Prepetition Senior

Lenders in the Collateral, the Prepetition Senior Lenders shall be entitled to allowed super

administrative priority claims under section 507(b) of the Bankruptcy Code against all

Debtors (collectively, the "**Prepetition Senior Lenders Adequate Protection Claims**") to

secure the repayment of all Prepetition Obligations for any diminution in value of the

Collateral (including Cash Collateral) from and after the Petition Date (the amount of any

such diminution to be determined by the Court after notice and the opportunity to be heard).

The Prepetition Senior Lenders Adequate Protection Claims shall have priority over all

administrative expenses of the kind specified in, or ordered pursuant to, any provision of the

Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to,

sections 105, 326, 328, 330, 503(b), 506(c) (subject to entry of the Final Order so providing),

507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether

incurred in the Chapter 11 Cases or any conversion thereof to cases under chapter 7 of the

Bankruptcy Code or any other proceeding related hereto or thereto), which Prepetition

Senior  Lenders Adequate Protection Claims shall be payable from and have recourse to all

prepetition and postpetition property of the Debtors and all proceeds thereof (including, upon

entry of the Final Order, the proceeds of any avoidance actions under chapter 5 of the

Bankruptcy Code), provided, however, that the Prepetition Senior Lenders Adequate

Protection Liens and Prepetition Senior Lenders Adequate Protection Claims shall be

subordinate and junior in right of payment and otherwise to the payment in full in cash and

satisfaction in the manner provided in the Postpetition Financing Documents of the

Postpetition Obligations and to the Carve-Out and provided further that such Prepetition

Senior Lenders Adequate Protection Claims shall be pari passu with the Gap Period Lenders

Adequate Protection Claims.

e.     As additional adequate protection for the interests of the Prepetition Lenders

in the Collateral, (i) from and after the Consent Date and to the extent of the value of the

Collateral, the Prepetition Obligations shall accrue interest at the "Default Interest Rate" (as

defined in the notes issued as part of the Prepetition Financing Documents), and (ii) if the

-29-

647084.03

Prepetition Obligations are paid in full prior to the "Maturity Date" (as defined in the Prepetition Financing Documents), the allowed secured claim owed on the notes issued under the Prepetition Financing Documents will include any redemption or prepayment premium provided for in such notes, up to the value of the Collateral, irrespective of acceleration of the Prepetition Obligations.

f.    As additional adequate protection for the Prepetition Senior Lenders, Branch Banking and Trust Company of Virginia (the "**Escrow Agent**") as Escrow Agent under that certain Escrow Agreement dated as of December 6, 2005 by and among Borrower, and Bank of New York (as agent for the Prepetition Senior Lenders), and Escrow Agent, [and as Escrow Agent under that certain Escrow Agreement dated as of September 19, 2005 by and among the Borrower, PBT, Ltd. as agent for the Prepetition Senior Lenders and the Escrow Agent] (collectively, the "**Escrow Agreements**") shall release and deliver all property in the Escrow Account (as defined in the Escrow Agreements) to the holders of the $75 million in principal amount of Senior Secured Notes defined as "Original Secured Notes" in the Prepetition SPA (the "**Original Senior Secured Notes**") pro rata based on the outstanding principal amount of such Original Senior Secured Notes held by each of them. The Escrow Agent is hereby directed to release all property in the Escrow Account as set forth herein without further instruction; provided, however, that in order to facilitate such release, the Debtors (including all subsidiaries and affiliates thereof), Bank of New York, PBT, Ltd. and the Prepetition Senior Lenders are hereby directed to execute any documents (including, joint written instructions) reasonably requested by the Escrow Agent Upon release of all amounts in the Escrow Account as set forth herein, the Escrow Agent may tender its resignation under the Escrow Agreements. The holders of the Senior Secured Notes shall apply the amounts they receive from the Escrow Account pursuant hereto against the obligations on the Original Senior Secured Notes; provided, that all rights are reserved as to whether such amounts should be applied against principal, interest, fees or other obligations.

35.    Subject in all respects to (i) the Permitted Liens, (ii) the Postpetition Obligations, (iii) the Postpetition Liens, (iv) the Carve-Out, and (v) the other terms and provisions of this Order,

647084.03

the Prepetition Subordinated Lenders are hereby provided with the following forms of adequate protection:

        a.    As adequate protection of the interests of the Prepetition Subordinated Lenders in the Collateral, the Prepetition Subordinated Lenders and the Prepetition Agent are hereby granted valid, binding, enforceable and perfected continuing replacement liens in all Collateral (the "**Prepetition Subordinated Lenders Adequate Protection Liens**"), to the extent of any diminution in the value of the Prepetition Junior Collateral (including the Prepetition Subordinated Lenders' Cash Collateral) from and after the Petition Date (the amount of any such diminution to be determined by the Court after notice and an opportunity to be heard), subject and junior only to the Postpetition Liens, Postpetition Obligations, Existing Liens (but only to the extent such Existing Liens are senior in priority to the Prepetition Senior Liens), Permitted Liens, Gap Period Lenders Adequate Protection Liens, Prepetition Senior Lenders Adequate Protection Liens, and the Carve-Out, on all Collateral, provided, however, that the Prepetition Subordinated  Lenders Adequate Protection Liens in favor of the Prepetition Subordinated Lenders shall be subordinate and junior in right of payment to the Adequate Protection Liens in favor of the Postpetition Lenders, Gap Period Lenders and Prepetition Senior Lenders.  Except as provided in this Order, the Prepetition Subordinated Lenders Adequate Protection Liens shall not be made subject to or pari passu with any Lien on the Collateral by any order subsequently entered in the Chapter 11 Case.

        b.    As additional adequate protection of the interests of the Prepetition Subordinated Lenders, the Prepetition Subordinated Lenders shall be entitled to allowed administrative priority claims under section 507(b) of the Bankruptcy Code (the "**Prepetition Subordinated Lenders Adequate Protection Claims**") for any diminution in value of the Prepetition Junior Collateral (including Cash Collateral) from and after the Petition Date (the amount of any such diminution to be determined by the Court after notice and an opportunity to be heard).  The Prepetition Subordinated Lenders Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation,

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c)

2    (subject to entry of the Final Order so providing), 507(a), 507(b), 546(c), 726 and 1114 of

3    the Bankruptcy Code, or otherwise (whether incurred in the Chapter 11 Cases or any

4    conversion thereof to cases under chapter 7 of the Bankruptcy Code or any other proceeding

5    related hereto or thereto), which Prepetition Subordinated Lenders Adequate Protection

6    Claims shall be payable from and have recourse to all prepetition and postpetition property

7    of the Debtors and all proceeds thereof (including, upon entry of the Final Order, the

8    proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code), provided,

9    however, that the Prepetition Subordinated Lenders Adequate Protection Claims are

10   subordinate and junior (a) in right of payment to the Prepetition Senior Lenders Adequate

11   Protection Claims and the Gap Period Lenders Adequate Protection Claims; (b) in right of

12   payment and otherwise to the payment in full in cash and satisfaction in the manner provided

13   in the Postpetition Financing Documents of the Postpetition Obligations and (c) to the Carve-

14   Out.

15   36.    The Adequate Protection Liens granted pursuant to this Order and the Gap Period

16   Financing Orders shall be deemed to be perfected automatically upon entry of this Order, without

17   the necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage or

18   other similar instrument or document in any state or public record or office and without the necessity

19   of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any

20   Collateral.

21   37.    The Debtors shall provide the Prepetition Agent and the Prepetition Lenders with

22   copies of all reports (including the DIP Budget), information and other materials delivered to the

23   Postpetition Agent and the Postpetition Lenders, all reporting previously provided to the Postpetition

24   Agent and the Postpetition Lenders in accordance with the Prepetition Financing Documents and

25   such other reports, information and materials as reasonably requested by the Prepetition Agent

26   and/or any of the Prepetition Lenders.

27   38.    The consent of the Prepetition Lenders and Gap Period Lenders, as applicable, to the

28   use of their Cash Collateral by the Debtors shall terminate upon the Debtors' failure to make any

647084.03

1    payment when due under this Order to or on behalf of the Prepetition Lenders or Gap Period

2    Lenders, as applicable.

3    39.    If all or any portion of the Collateral is sold, such funds will be remitted in the

4    following order, in each case until the applicable Indebtedness thereof is paid in full and then to the

5    next category:  First, to satisfy the Postpetition Obligations, then to satisfy the Gap Obligations and

6    Prepetition Senior Indebtedness pari passu, then to satisfy the Prepetition Subordinated

7    Indebtedness, in each case pro rata based on the outstanding principal amount of such Indebtedness

8    held by each of them.

9    40.    Notwithstanding anything herein to the contrary, but subject to the terms of the

10    Intercreditor Agreement, this Order is without prejudice to, and does not constitute a waiver of,

11    expressly or implicitly, the rights of the Prepetition Lenders or Gap Period Lenders to seek

12    additional adequate protection at any time, including prior to a Termination Event.

13    41.    To the extent that any Postpetition Obligations remain unpaid, any amounts

14    disgorged by the Prepetition Lenders (any such disgorged amounts to be obtained first from the

15    Prepetition Subordinated Lenders, prior to any amounts being so disgorged from the Prepetition

16    Senior Lenders) in respect of any of the Prepetition Indebtedness or the Gap Period Financing

17    (whether such amounts were received by the Prepetition Lenders prior or subsequent to the Petition

18    Date) shall upon such disgorgement be immediately delivered by the Debtors to the Postpetition

19    Lenders to be applied to repay the Postpetition Obligations in accordance with the terms of the

20    Postpetition Financing Documents.

21    42.    Nothing herein affects the rights of any party under the Intercreditor Agreement.

22    43.

23    a.    Notwithstanding anything contained herein to the contrary, the extent,

24    validity, priority, perfection and enforceability of the Prepetition Senior Indebtedness, the

25    Prepetition Subordinated Indebtedness, the Prepetition Senior Liens and the Prepetition

26    Junior Liens (as applicable), and all acknowledgments, admissions and confirmations of the

27    Debtors above, are for all purposes subject to the rights of any party in interest to object to,

28    seek to invalidate or subordinate, or otherwise challenge (including a determination of the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

647084.03

1    validity, priority, and extent of any lien) the Prepetition Senior Indebtedness, the Prepetition

2    Subordinated Indebtedness, the Prepetition Senior Liens, and/or the Prepetition Junior Liens

3    (as applicable); provided, however, that any such objection or challenge must be filed in this

4    Court within forty-five (45) days after appointment of the Committee of unsecured

5    claimholders under section 1102 of the Bankruptcy Code (but in no event later than sixty

6    (60) days after entry of this Order) or any subsequent date that may be agreed to in writing

7    by the Prepetition Senior Lenders or Prepetition Subordinated Lenders (as applicable).  If no

8    such objection or challenge is filed within such time period, all parties in interest shall be

9    bound by the acknowledgements, admissions, and confirmations of the Debtors above.

10           b.       If no such complaint as to the Prepetition Senior Indebtedness, the Prepetition

11    Subordinated Indebtedness, the Prepetition Senior Liens, and/or the Prepetition Junior Liens

12    (as applicable) is filed within such time period, or such timely filed complaint does not result

13    in a final and non-appealable order of this Court that is inconsistent with clauses (i) and (ii)

14    of this subparagraph, then, without the requirement or need to file any proof of claim with

15    respect thereto, (i) the Prepetition Senior Indebtedness and the Prepetition Subordinated

16    Indebtedness (as applicable) shall constitute allowed secured claims for all purposes in the

17    Chapter 11 Cases and any subsequent proceedings under the Bankruptcy Code, including,

18    without limitation, any chapter 7 proceeding if the Chapter 11 Cases are converted to cases

19    under chapter 7 of the Bankruptcy Code (each, a "**Successor Case**"), and (ii) the Prepetition

20    Senior Liens and the Prepetition Junior Liens (as applicable) shall be deemed legal, valid,

21    binding, enforceable, perfected, not subject to subordination (except as to the Postpetition

22    Liens and as otherwise specified in this Order, the other Postpetition Financing Documents

23    and the Prepetition Financing Documents) or avoidance for all purposes in the Chapter 11

24    Cases and any Successor Cases.

25           44.      Notwithstanding anything to the contrary herein or in any other Postpetition

26    Financing Document, in any Prepetition Financing Document, or in any Gap Period Financing

27    Document, the Postpetition Liens and the superpriority claims granted to the Postpetition Lenders

28    hereunder and under the other Postpetition Financing Documents are and shall be at all times

647084.03

1  (including, without limitation, after the occurrence of a Termination Event) senior and prior in all

2  respects to (a) the Adequate Protection Liens and all other Liens securing any Prepetition

3  Indebtedness and the Gap Period Financing, in all cases, whether granted under this Order, the

4  Prepetition Financing Documents, the Interim Gap Period Financing Orders, the Gap Period

5  Financing Documents, or otherwise, and (b) the Adequate Protection Claims, any other obligations

6  in respect of adequate protection and all other claims held by the Prepetition Lenders (including,

7  without limitation any superpriority claims in addition to the Adequate Protection Claims), in each

8  case, whether arising under or related to the Prepetition Financing Documents, this Order or

9  otherwise.

10  45.  The Debtors shall, on or before December *16*, 2007, serve on the Interim Notice

11  Parties by first class mail copies of the Motion, this Order and a notice of the Final Hearing (the

12  "**Final Hearing Notice**") to be held on *Jan. 17*, 2008 at *2:00pm* to consider entry of the Final    *1BJD*

13  Order. Copies of the Motion, this Order and the Final Hearing Notice also shall be served upon all

14  persons requesting service of papers pursuant to Bankruptcy Rule 2002 by first-class mail within

15  two business days following the receipt of such request. The Final Hearing Notice shall state that

16  any party in interest objecting to the entry of the Final Order shall file written objections with the

17  Court no later than 4:00 p.m. Pacific Time on *Jan 10, 2008*, which objections shall be served    *2BO*

18  so that the same are received on or before such date and time by: (a) Hennigan, Bennett & Dorman

19  LLP, 865 South Figueroa Street, Suite 2900, Los Angeles, California 90017 (attn: Bruce Bennett,

20  Esq. and James Johnston, Esq.), counsel to the Company; (b) O'Melveny & Myers LLP, 400 South

21  Hope Street, Los Angeles, California 90071 (attn: Ben H. Logan, Esq.), and 7 Times Square Tower,

22  New York, New York 10036 (attn: Ilan Nissan, Esq.), co-counsel to OZ Master Fund Ltd.;

23  (c) Richards Kibbe & Orbe LLP, One World Financial Center, New York, New York 10281 (attn:

24  H. Rowan Gaither, Esq., and Michael Friedman, Esq.), co-counsel to Denarius Touch, L.L.C.;

25  (d) Munger, Tolles & Olson, LLP, 355 South Grand Avenue, Suite 3500, Los Angeles, California

26  90071 (attn: Mark Shinderman, Esq.), counsel to Plainfield Special Situations Masterfund Limited

27  and Plainfield West Investments LLC; (e) Stroock & Stroock & Lavan LLP, 2029 Century Park

28  East, Suite 1800, Los Angeles, CA 90067-3086 (attn: Alan Z. Yudkowsky, Esq.), counsel to

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

647084.03

1  Highbridge International, LLC.; and (f) the Office of the United States Trustee, 725 South Figueroa

2  Street, Suite 2600, Los Angeles, California 90017.

3      46.    Subject to entry of a Final Order so providing, any Affiliate (as defined by the

4  Bankruptcy Code) of the Debtors that hereafter becomes a debtor in a case under chapter 11 of the

5  Bankruptcy Code in this Court automatically and immediately, upon the filing of a petition for relief

6  for such Affiliate, shall be deemed to be one of the "Debtors" hereunder in all respects, the chapter

7  11 case of such Affiliate shall be deemed to be a "Chapter 11 Case" hereunder in all respects and all

8  of the terms and provisions of this Order, including, without limitation, those provisions granting

9  Liens on the Collateral of the Debtors and claims in the Chapter 11 Cases, automatically and

10  immediately shall be applicable in all respects to such Affiliate and its chapter 11 estate.

11  

12      47.    The Prepetition Agent shall (to the extent necessary) be authorized (but not required)

13  to file a master proof of claim against the Debtors (a "**Master Proof of Claim**") on behalf of itself

14  and the applicable Prepetition Lenders on account of their respective prepetition claims arising

15  under the Prepetition Financing Documents, and the Prepetition Agent shall not be required to file a

16  verified statement pursuant to Bankruptcy Rule 2019. If the Prepetition Agent so files a Master

17  Proof of Claim against the Debtors, the Prepetition Agent and each Prepetition Lender (as

18  applicable) and each of their respective successors and assigns, shall be deemed to have filed a proof

19  of claim in respect of its claims against the Debtors arising under the respective Prepetition

20  Financing Documents, and each shall be allowed or disallowed as if such entity had filed a separate

21  proof of claim in the Chapter 11 Cases in the amount set forth in the applicable Master Proof of

22  Claim. The Prepetition Agent shall further be authorized to amend the Master Proof of Claim from

23  time to time.

24  

25      48.    Thomas Lumsden, or a successor reasonably acceptable to the Requisite Lenders,

26  shall be at all times (so long as there are any obligations owed on the Postpetition Credit Agreement

27  or any outstanding Gap Period Financing or Prepetition Indebtedness) retained as the Debtors' Chief

28  

-36-

1  Restructuring Officer (and, during the pendency of the Delaware Proceeding, be retained as the

2  Custodian), in each case reporting directly to Solidus' board of directors.

3      49.    This Order shall constitute findings of fact and conclusions of law.

4      50.    In the event that any provision of this Order conflicts with any term of the other

5  Postpetition Financing Documents, this Order shall govern.

6  Dated: December 17, 2007

7

8

9              Honorable Thomas B. Donovan
               UNITED STATES BANKRUPTCY JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

647084.03

**NOTE TO USERS OF THIS FORM:**

*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| In re | SOLIDUS NETWORKS, INC., d/b/a<br>PAY BY TOUCH, a/f/k/a PAY BY<br>TOUCH SOLUTIONS, et al.1 | CHAPTER 11 |
|---|---|---|
| | Debtors. | CASE NUMBER 1:07-20027 |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.    You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(1)(E), that a judgment or order entitled *(specify)*:

INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO SECTION 364 OF BANKRUPTCY CODE, (III) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, (IV) PROVIDING ADEQUATE PROTECTION TO PREPETITION LENDERS PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND (V) SCHEDULING A FINAL HEARING

was entered on *(specify date)*:  12|17|07

2.    I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on (specify date): 12|17|07

Dated: 12|17|07

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
**Deputy Clerk**

---

1    The Debtors include the following entities: Solidus Networks, Inc., d/b/a Pay By Touch, a/k/a Pay By Touch Solutions, a/f/k/a BioPay, Pay By Touch Payment Solutions, LLC, a/f/k/a EPX, a/f/k/a Payment Acquisition Corporation, a/f/k/a InterCept Payment Solutions, LLC, a/f/k/a SPS Payments, LLC, a/f/k/a IPS Solutions, LLC, a/f/k/a iPay, a/f/k/a Pay By Touch Solidus Merchant Services, Pay By Touch Processing, Inc., a/f/k/a CSSI Acquisition Corporation, a/f/k/a Card Systems Solutions, Inc., Pay By Touch Check Cashing, Inc., Check Elect, Inc., Seven Acquisition Sub, LLC, a/f/k/a Seven Street Software, Pay by Touch Checking Resources, Inc., Indivos Corporation, a/f/k/a Smart Touch, Inc., a/f/k/a Veristar Corporation, a/f/k/a Indivos Acquisition Corporation, CardSystems Payment Solutions, LLC, Maverick International Services, Inc., and ATMD Acquisition Corporation, a/f/k/a ATMD Direct, a/f/k/a ATM Online, Inc.

---

## MAILING LIST

Office of the United States Trustee
725 South Figueroa Street, Suite 2600
Los Angeles, CA 90017

Bruce Bennett
James O. Johnston
Lance Miller
HENNIGAN, BENNETT & DORMAN, LLP
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017

177497\v1