PAUL J. COUCHOT -- State Bar No. 131934
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660

Telephone: (949) 720-4100
Facsimile:   (949) 720-4111

Counsel for Biometric Payment Solutions

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SOLIDUS NETWORKS, INC., a<br>Delaware corporation, dba<br>PAYBYTOUCH.COM,<br><br>          Debtor. | Case No. 2:07-20027-TD<br><br>Chapter 11 Proceeding<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER (i) DETERMINING THAT DEBTOR LACKS BENEFICIAL INTEREST IN CERTAIN PATENT RIGHTS, (ii) COMPELLING ABANDONMENT THEREOF, (iii) TO THE EXTENT NECESSARY, AMENDING FINAL ORDER AUTHORIZING EMERGENCY FINANCING (iv) TO THE EXTENT NECESSARY, AMENDING THE INTERIM ORDER AUTHORIZING EMERGENCY FINANCING IN THE CHAPTER 11 PROCEEDING, AND (v) TO THE EXTENT NECESSARY, OBJECTION TO THE FINAL ORDER AUTHORIZING EMERGENCY MOTION IN THE CHAPTER 11 PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT THEREOF**<br><br>Date:     January 17, 2008<br>Time:     2:00 p.m.<br>Place:    Courtroom 1345 |

# TABLE OF CONTENTS

**Page**

I.  FACTUAL BACKGROUND ........................................................................... 4

    A.  Patent Acquisition Agreement ........................................................... 4

    B.  Undisclosed Security Interest Against Debtor's Interest
        in the Patents .................................................................................... 7

    C.  Biometric Will Be Prejudiced if Its Rights to the Patents
        Are Not Clarified .............................................................................. 9

II.  THE PATENTS ARE SUBJECT TO A RESULTING TRUST AND
    THEREFORE ARE NOT PROPERTY OF THE ESTATE ............................. 10

    A.  The Patents Are Subject to the Resulting Trust .................................... 10

    B.  Property Subject to a Resulting Trust Is Not Property of the Estate ............ 12

    C.  A Resulting Trust Is Superior to the Trustee's Strong Arm Powers ............ 13

    D.  A Resulting Trust Is Superior to the Rights of a Lien Creditor ................. 13

III.  IF AND TO THE EXTENT NECESSARY, BIOMETRIC SEEKS TO
    AMEND THE FINAL ORDER AUTHORIZING EMERGENCY
    FINANCING IN THE INVOLUNTARY PROCEEDING AND THE
    INTERIM ORDER AUTHORIZING THE EMERGENCY MOTION
    IN THE CHAPTER 11; AND OBJECTS TO THE MOTION FOR A
    FINAL ORDER AUTHORIZING EMERGENCY FINANCING IN
    THE CHAPTER 11 PROCEEDING ............................................................. 16

IV.  CONCLUSION ......................................................................................... 19

1
2

# TABLE OF AUTHORITIES

**Page**

**Cases**

American Motorists Ins. Co. v. Cowan,
    127 Cal.App.3d 875, 179 Cal.Rptr. 747 (1982) ............................................10

Carina Mercury, Inc. v. Igaravides,
    344 F.2d 397 (1st Cir. 1965) ............................................................14

Dennes v. Butts,
    90 F.2d 522 (9th Cir.1937) ............................................................13

East Coalinga Oil Fields Corp. v. Robinson,
    86 Cal.App.2d 153 (1948) ............................................................15

Georgia Pacific ............................................................................13

In re Bushey,
    210 B.R. 95 (6th Cir. BAP 1997) ......................................................11

In re Cutty's-Gurnee, Inc.,
    133 B.R. 934 (Bankr. N.D. Ill. 1991) ................................................15

In re Dahlquist,
    34 B.R. 476 (Bankr.D.S.D. 1983) ...................................................12, 13

In re Dow Corning Corp.,
    192 B.R. 428 (Bankr.E.D.Mich. 1996) ..................................................14

In re E.D. Wilkins Grain Co.,
    235 B.R. 647 (Bankr. E.D.Cal. 1999) ..................................................18

In re Foam Systems,
    92 B.R. 406 (9th Cir. BAP 1988) ......................................................11

In re Friedman,
    241 F. 603 (E.D.N.Y. 1917) ...........................................................14

In re Golden Triangle Capital, Inc.,
    171 B.R. 79 (9th Cir.BAP 1994) ....................................................10, 11

In re Jeter,
    48 B.R. 404 (Bankr.N.D.Tex. 1985) ....................................................14

In re Markair, Inc.,
    172 B.R. 638 (9th Cir. BAP 1994) .................................................12, 13

In re Rogal, supra,
    112 F.Supp. at 717 ...................................................................13

In re Roxy Roller Rink Joint Venture,
    73 B.R. 521 (Bankr. S.D.N.Y. 1987) ...................................................18

#120273 v2 - Biometric Mtn Abandon

# TABLE OF AUTHORITIES

## (Continued)

**Page**

In re Sale Guar. Corp.,
   220 B.R. 660 (9th Cir.BAP 1998) .................................................................10

In re Sun Belt Elec. Constructors, Inc.,
   56 B.R. 686 (Bankr.N.D.Ga. 1986) ...............................................................13

In re Sunflower State Refining Co.,
   183 F. 834 (D.Kan. 1911) ..............................................................................14

In re Surplus Furniture Liquidators, Inc. of High Point
   199 B.R. 136 (Bankr.M.D.N.C. 1995) ..........................................................11

In re Szabo,
   353 B.R. 554 (Bankr.N.D.Ill. 2006) ..............................................................11

In re Ward,
   300 B.R. 692 (Bankr.S.D.Ohio 2003) ...........................................................11

Matter of Torrez,
   63 B.R. 751 (9th Cir. BAP 1986) ..................................................................13

Norwest Bank Worthing v. Ahlers,
   485 U.S. 197, 206, 99 L.Ed.2d 169, 108 S.Ct. 963 (1988) ..........................18

Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.),
   392 F.3d 1064 (9th Cir. 2004) .......................................................................18

Shacket, Ehrlich, Martin and Millikin .............................................................15

**Statutes**

11 U.S.C. § 105(a) ....................................................................................8, 16, 18
11 U.S.C. § 303(f) ..............................................................................................8, 18
11 U.S.C. § 361 ........................................................................................8, 16, 17
11 U.S.C. § 362 ..............................................................................................16, 17
11 U.S.C. § 363 ........................................................................................8, 16, 17
11 U.S.C. § 364 ......................................................................................16, 17, 18
11 U.S.C. § 502(f) ...............................................................................................18
11 U.S.C. § 507(a)(2) ..........................................................................................18
11 U.S.C. § 541 ...................................................................................................12
11 U.S.C. § 541(a) ...............................................................................................13
11 U.S.C. § 541(d) ...............................................................................................13
11 U.S.C. § 544 ...................................................................................................13
11 U.S.C. § 544(a) ...............................................................................................13
11 U.S.C. § 549(b) ...............................................................................................18
11 U.S.C. § 554 ...................................................................................................13
Cal.Civ.Code § 19 ...............................................................................................15
Cal.Civ.Code § 856 .............................................................................................13
Cal.Comm.Code Article 9 ...................................................................................16

#120273 v2 - Biometric Mtn Abandon

## TABLE OF AUTHORITIES

### (Continued)

**Page**

**Rules**

F.R.C.P. 52(b) ........................................................................................................2, 17, 19
F.R.C.P. 59(e) ........................................................................................................2, 17, 19
F.R.C.P. 9023 ..................................................................................................................17
L.B.R. 9013-1(a)(7) ..........................................................................................................2

**Treatises**

7 Witkin, *Summary of California Law,* "Trusts", §123, p. 5481 (8th ed.)............................11

1    **TO THE HONORABLE THOMAS DONOVAN, UNITED STATES BANKRUPTCY JUDGE,**

2    **THE DEBTOR IN POSSESSION AND OTHER PARTIES IN INTEREST:**

3         **PLEASE TAKE NOTICE** that on January 17, 2008, at 2:00 p.m., in the above-entitled

4    courtroom located at 255 East Temple Street, Los Angeles, California 90012, a hearing will be held to

5    consider the Motion for Order (i) Determining that the Debtor Lacks any Beneficial Interest in certain

6    Patent Rights, (ii) to Compel Abandonment thereof to the Beneficial Owner, (iii) to the extent

7    necessary, Amending the Final Order Authorizing Emergency Financing entered on December 11,

8    2007 pursuant to F.R.C.P. 52(b) and 59(e), (iv)  to the extent necessary, Amending the Interim Order

9    Authorizing Debtors to Obtain Postpetition Financing entered on December 17, 2007, and (v) to the

10   extent necessary, construing this pleading as an objection with respect to the final hearing on the

11   Debtor's Motion for an Order Authorizing Postpetition Financing, (the "Motion") filed by Biometric

12   Payment Solutions ("Biometric").

13        This Motion is based upon the attached Memorandum of Points and Authorities, the

14   Declarations of Stephen Jensen ("Jensen Declaration") and Joan Tibor McNeal ("McNeal

15   Declaration"), appended hereto, all other pleadings, papers and documents on file in this case, and

16   upon such additional evidence and argument as may be presented at or before the time of the hearing

17   on this matter.

18        **IF YOU DO NOT OPPOSE THIS MOTION, YOU NEED TAKE NO FURTHER**

19   **ACTION.  HOWEVER, IF YOU OBJECT TO THIS MOTION, PURSUANT TO LOCAL**

20   **BANKRUPTCY RULE 9013-1(a)(7), OBJECTIONS MUST BE FILED WITH THE COURT**

21   **NO LATER THAN FOURTEEN (14) DAYS PRIOR TO THE DATE OF THE HEARING ON**

22   **THE MOTION.  YOU MUST FILE YOUR OBJECTION WITH THE CLERK OF THE**

23   **UNITED STATES BANKRUPTCY COURT LOCATED 255 EAST TEMPLE STREET, LOS**

24   **ANGELES, CALIFORNIA 90012.  YOU MUST ALSO SERVE A COPY OF YOUR**

25   **OBJECTION UPON COUNSEL FOR BIOMETRICS AT THE MAILING ADDRESS**

26   **INDICATED IN THE UPPER LEFT HAND CORNER OF THE FIRST PAGE OF THIS**

27   **MOTION, AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE.  ANY FAILURE**

28   **TO TIMELY FILE AND SERVE AN OBJECTION MAY RESULT IN A WAIVER OF ANY**

#120273 v2 - Biometric Mtn Abandon

1 **SUCH OBJECTION, AND THE COURT MAY ENTER AN ORDER GRANTING THE**

2 **MOTION WITHOUT FURTHER NOTICE.**

3     **WHEREFORE**, Biometric respectfully request that the Court enter an order (i) determining

4 that the Debtor lacks any beneficial interest in certain Patent Rights described in detail hereinbelow,

5 (ii) compelling abandonment thereof to Biometric, (iii) to the extent necessary, Amending the Final

6 Order Authorizing Emergency Financing entered on December 11, 2007, (iv) to the extent necessary,

7 Amending the Interim DIP Financing Order entered on December 17, 2007, (v) to the extent

8 necessary, construing this pleading as an objection with respect to the final hearing on the Debtor's

9 DIP Financing Motion, and (vi) such further relief as the Court deems just and proper.

10 DATED:  December 21, 2007

                                     **WINTHROP COUCHOT**

11                                      **PROFESSIONAL CORPORATION**

12

13                           By: /s/ Paul J. Couchot

14                                Paul J. Couchot
                             Counsel for Biometric Payment Solutions

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#120273 v2 - Biometric Mtn Abandon

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTUAL BACKGROUND

#### A.    Patent Acquisition Agreement

In June 1999, Joan Tibor- McNeal (a general partner of Biometric) filed a patent application for an invention entitled CHECK VERIFICATION SYSTEM, which later issued as U.S. Patent No. 6,728,397 (the "first Patent"). Thereafter, on June 12, 2007 a Continuation-in-Part, patent No.7,231,068, was issued by the USPTO (the "second Patent"). Lastly, *pending* patent No. 20050097037 (the "third Patent") was issued a Notice of Allowance in October, 2007. The first patent, second patent and third patent (collectively "the Patents") are jointly owned by partners of Biometric Payment Solutions ("Biometric").

On January 19, 2005, Biometric agreed to sell specific rights in the Patents to Solidus Networks dba PayByTouch ("Solidus" or "Debtor") pursuant to the executory contract dated January 19, 2005, entitled Patent Acquisition Agreement (the "Agreement"), a copy of which is attached as Exhibit "3" to the McNeal Declaration, for an aggregate purchase price of $6,000,000.00 and for other consideration, including ongoing royalties and minimum royalties. Solidus, pursuant to the Agreement, was given specific rights to the Patents with the initial payment of $3,000,000.00. A "final payment" of $3,000,000.00 was due within six months of the allowance date of the second Patent (that date being February 7, 2007). By the terms of the Agreement, at Solidus's option, Solidus could make the Final Payment, or **not pay the Final Payment, in which event Solidus was required to reconvey, assign and transfer its entire right, title and interest in the Patents** back to Biometric. The relevant portion of the Agreement states:

> (b) Final Payment. As additional consideration, Purchaser will deliver to Seller on the Final Payment Date, i.e., the date that is the earlier of 180 days after issuance by the USPTO of a Notice of Allowance in connection with pending U.S. Patent Application Serial No. 10/816,037 (filed April 1, 2004) (the "Allowance Event"), or three years from the execution of this Agreement, a "Final Payment" of a fully vested Convertible Promissory Note with a face value of $3,000,000 (with no warrant coverage) (the "Final Payment Note") unless Purchaser's Convertible Promissory Notes have been converted into other securities of Purchaser prior to the Final Payment Date, then such shares of stock or other securities as Seller would have received upon conversion of the Final Payment Note if Seller had owned the Final Payment Note at the date of conversion of the Convertible Promissory Notes;

-4-

provided, however, that in lieu of all or any portion of the Final Payment Note, Seller may elect to receive cash in an equal amount and provided further, however, that, after the Allowance Event and **before the Final Payment Date, Purchaser shall have the option to either: (i) pay to Seller the Final Payment; or (ii) not pay to Seller the Final Payment, in which event Purchaser shall reconvey, assign and transfer its entire right, title and interest in the Transferred Patents to Seller,** subject to the reservation of a nonexclusive license in perpetuity to U.S. Patent No. 6,728,397 granted by Seller to Purchaser (the "reservation"), and to reduce by fifth percent (50%) of the Royalty Percentage amounts (defined below) due Seller if Purchaser exercises such reservation (via written notice by the Final Payment Date), and to reduce by one hundred percent (100%) the Royalty Percentage amounts due Seller if Purchaser does not exercise such reservation.  In either event, Seller shall keep the Initial Payment;

As noted above, on February 7, 2007, the second Patent was allowed by the USPTO.  Thus, pursuant to the Agreement, Solidus had six months from that date to pay the additional $3,000,000.00 final payment, or return the patents to Biometric, or return the patents but retain a nonexclusive license in the first patent thereby reducing the royalties by 50% pursuant to the Reservation.

On August 3, 2007, Solidus exercised its rights and advised in writing that it was not paying the Final Payment and was ready to reconvey, assign and transfer the Patents back to Biometric, with the requisite documentation.  Specifically, Biometric received a letter from Solidus advising that pursuant to the provisions of the Patent Assignment Agreement, Solidus was not going to make the Final Payment, as defined therein, and was "ready to reconvey, assign and transfer right, title, and interest to the Transferred Patents" to Biometric.  A copy of the August 3, 2007 letter from Solidus to Biometric is attached hereto as Exhibit "4" to the McNeal Declaration.  Solidus made a business decision to return the Patents to Biometric, and notified Biometric of that decision on August 3, 2007, while Solidus still had a functioning Board of Directors, which approved the return of the Patents.  Biometric prepared drafts of the conveyance documents.  Solidus gave repeated assurances that the conveyance would be effectuated.  *See* Jensen Declaration.

Apparently, due to ongoing matters unrelated to Biometric, to date the documentation has not been executed.  At the November 20th financing hearing, the Debtor stated that essentially the only reason the Patents were not reconveyed to Biometric was that the secured lenders objected to or impeded the reconveyance:

#120273 v2 - Biometric Mtn Abandon

Mr. Johnston: ...That transaction basically gave the Debtor the right to return that assets to Bio[metric] and alleviate itself from a $ 3,000,000 payment obligation and perhaps some ongoing payment of royalties, and the Debtor was interested in doing that prior to the petition date.

The problem is that the Debtor did not have authority to do that unfettered because the secured lenders here, again, as I understand it, this is through my due diligence of this morning, asserted and actually perfected a security interest in the patent rights at issue here. So the Debtors were not able to release this asset back to Bio[metric] absent consent of the lenders, which was not obtained prior to the petition date.

See 11/20/07 Transcript, 14:5-17, attached hereto as exhibit "2" to the Jensen Declaration.

It is Biometric's position, as set forth in detail below, that its rights are superior to the secured lenders, and therefore the secured lenders had no right to block the reconveyance. Irrespective, it is abundantly clear that the intention of both the Debtor and Biometric was that the Patents would be reconveyed.

Even at the November 20th hearing, the attorneys for the Debtor and the secured lenders represented to the Court that Biometric's position would not be prejudiced by the Debtor's proposed financing, and the Court granted the Financing Motion based in part upon such representations.

At the November 20th hearing on the Financing Motion, Debtor's counsel expressly stated that the Financing Motion would not resolve the ownership of the Patents, which is a separate issue for a later proceeding:

Mr. Johnston: ...We are not seeking a priming lien. **We are not seeking to supersede anybody's ownership interest in these patents** ***

Mr. Johnston: ...I think the changes to paragraph six or the clarifications to footnote six make it clear that [Biometric's] rights as well as all other parties in interest other than the Debtor and successors would reserve the right to challenge the liens

The Court: I think that's correct, Ms. Parmes.

Ms. Parmes: Thank you.

Mr. Johnston: With respect to the patents, let's be clear what we're doing and what we're not doing. **If the Debtor actually did relinquish the ownership of these assets, it has nothing on which to grant a lien now.** So if that's the case, then Biometric is protected. If, in fact, the Debtor did not relinquish ownership of the patents prepetition and still owns them, then this order would grant a lien on them to the extent that the lenders don't already have a lien, which they assert that they do.

So there's -- there is no additional prejudice to Biometric by virtue of this order. It's intended to **leave for another day the dispute regarding**

-6-

1   **ownership of the patents** if there is a dispute and to enable these funds to come in the door.

2   ***

3   Mr. Johnston:  Your Honor, I think Ms. Parmes is asking you to decide the question of ownership, and there's no basis to do that now.

4   The Court:  Well, if I were to make a decision, I would have to decide the issue one way or another, and I don't think I have enough information or enough

5   time to do that today. ***

6 See 11/20/07 Transcript, 14:22-24; 19:7-20; 20:5-7 (emphasis added), attached as exhibit "2" to the

7 Jensen Declaration.

8     In light of the now pending bankruptcy proceeding, it is likely that the Debtor will not execute

9 the conveyance in the absence of a court order.

10   **B.**   **Undisclosed Security Interest Against Debtor's Interest in the Patents**.

11     Soon after receiving Solidus' notification that it had elected to return the Patents, to its

12 surprise, Biometric discovered through the U.S. PTO a filing by the Bank of New York relating to the

13 Patents which Solidus had elected to return to Biometric.  The filing by the Bank of New York

14 referenced a long list of Patents and patent application, including a security interest filed against

15 Solidus' interests in the Patents by the Bank of New York in February 2006.  Biometric realized at

16 that time that Solidus had transferred to the Bank of New York, for collateral purposes, its interest in

17 the Patents without the consent of Biometric as per the Agreement.  By the express terms of the Patent

18 Acquisition Agreement, Solidus could not transfer any of its rights to the Patents to any third party

19 without Biometrics's express written consent.  Notwithstanding this covenant, Solidus purportedly

20 assigned the Patents as collateral for the pre-petition loan of the Funding Lenders.  Biometric has been

21 informed that the Collateral Agent had been provided a copy of the Agreement prior to funding the

22 pre-petition loan such that the Collateral Agent had knowledge of the covenant prohibiting any

23 transfer of rights.  Specifically, the Debtor admitted that a copy of the Agreement was provided to

24 Collateral Agent as part of the due diligence for the pre-petition loan.  *See* Jensen and McNeal

25 Declarations.

26     Biometric contacted Solidus (Steve Zelinger, General Counsel for Solidus) to inquire about

27 this situation, and Solidus informed Biometric that it would work on having the lien removed, and get

28 the documentation completed.  Steve Zelinger, General Counsel for Solidus, indicated that

1    management for Solidus was working on clearing this up so that the paperwork to reconvey the

2    Patents could be completed.  A true and correct copy of Steve Jensen's e-mail sent to Mr. Zelinger on

3    August 24, 2007 in this regard is attached as Exhibit "1" to the Jensen Declaration.

4        Solidus was contacted several subsequent times by Biometric partners and Biometric counsel

5    regarding the release of the Patents, and Solidus informed Biometric that communications were in

6    progress with the lien holder and that it should be resolved soon.  *See* Jensen Declaration.  Throughout

7    the months extending from August 2007, and even after the filing of the petition for involuntary

8    bankruptcy, Steve Zelinger consistently maintained that the decision to return the Patents was

9    effective, and that the task of getting the proper documentation to reflect the return was a task that

10   would be completed.  Indeed, all discussions with Steve Zelinger accepted that the Patents now

11   belonged to Biometric, but that the only thing remaining was to complete the formality of the

12   paperwork for the U.S. Patent Office.  *See* Jensen Declaration.

13       On October 31, 2007, three creditors sought involuntary bankruptcy of Solidus.  The Bank of

14   New York is the agent for the Creditors, which have a lien against Solidus' interest in the Patents.

15       On November 19, 2007, the Debtor filed an Emergency motion for an Interim Order (I)

16   Authorizing Emergency Financing Pursuant to Sections 303(f) and 105(a) of the Bankruptcy Code;

17   (II) Authorizing use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III)

18   Providing Adequate Protection to Lenders Pursuant to Sections 361 and 363 of the Bankruptcy Code,

19   and (IV) Scheduling a Final Hearing ("Financing Motion").

20       On November 20, 2007, Biometric filed a Response to the Financing Motion; and on

21   December 11, 2007, Biometric filed a Limited Objection To Final Order Authorizing Financing and

22   Use of Cash Collateral ("Limited Objection"), thereby preserving Biometric's rights with respect to

23   the Patents.  The funding lenders could take no greater rights in the Patents than those held by Solidus.

24   Counsel for OZ/Denarius specifically conceded this point at the November 20th hearing - "So, suffice

25   to say that we're only getting a lien on what the estate has from the point of the secured lenders." *See*

26   11/20/07 Transcript, 28:1-2, attached as exhibit "2" to the Jensen Declaration.  Similarly, Debtor's

27   counsel stated - "We are not seeking to supersede anybody's ownership interest in these patents..."

28   *See* 11/20/07 Transcript, 14:23-24.

**C.      Biometric will be Prejudiced if its Rights to the Patents are Not Clarified.**

Under the Agreement, Solidus must prosecute the Patents, which incurs significant legal fees and expenses. The Patents each have deadlines at the United States Patent and Trademark Office (USPTO) and in foreign patent offices, including payment obligations, in order to keep the Patents in full force and effect. For example, U.S. Patent Number 6,728,397 had a maintenance fee become payable in the United States Patent Office on April 27, 2007. Solidus has not authorized the payment of this amount, and a surcharge became payable on October 27, 2007. If the maintenance fee and surcharge are not paid by April 27, 2008, the patent will become abandoned, causing irreparable harm. Solidus, to date, has not been attending to this matter.

In addition, the issue fee is due for U.S. Patent application No. 30050097037 on February 2, 2008. Prior to paying the issue fee, a continuation application should be filed, requiring that someone authorize and pay a patent lawyer to proceed. To date, Solidus has given no attention to this matter. If this issue fee is not paid, and a continuation application is not filed, additional irreparable harm will occur to the Patents. These actions not only will incur legal expenses and costs, but will require attention of management in the strategy. Certain filing dates for foreign protection corresponding to the Patents have also passed. The Patents also continue to have pending applications in foreign markets that are not receiving any attention by Solidus. Solidus was prohibited, unless it made the Final Payment, to abandon any such patent applications without the consent of Biometric. Biometric has not consented to the abandonment of these patents, yet due to inattention, patent applications are and will become abandoned in foreign countries and the United States very soon. Given that Solidus made a business decision that these Patents were no longer of interest, and elected to return the Patents to Biometric, it clearly has no remaining interest in incurring additional expense and devoting management time and effort to pursuing the Patents. Yet, to the extent the Bank of New York continues to assert a right in the Patents, they are in limbo, with nobody providing instructions to the patent attorney attending to the Patents, or paying the necessary fees, because Solidus rightly believes that the Patents belong to Biometric. Biometric would be grossly and unjustly harmed if the Patents are not returned in accordance with the terms of the Agreement and the clear intention of the parties.

1    Biometric is a small company which is owned and operated primarily by three individuals,

2    with limited resources.  The Patents are significant assets of Biometrics.  Biometrics is in a very

3    difficult position, since preservation of the Patent rights will necessitate a significant out of pocket

4    costs as well as a commitment of time by its principals, and yet the ownership of the Patents has been

5    called into question.

6        Moreover, pursuant to the Agreement, Biometric has several ongoing duties.  The most

7    material of such duties appear in Section 2.1 "Seller Assistance", which requires among other things,

8    assisting Solidus in infringement matters, including testifying as a witness.  Pursuant to this provision,

9    Solidus had continually enlisted the assistance of both Ms. Tibor-McNeal of Biometrics and Steve

10   Jensen, Biometric's intellectual property counsel.  Mr. Jensen was enlisted to provide assistance in

11   litigation enforcing the Patents by Solidus, in identifying other parties that might potentially infringe

12   as requested by Solidus, and in providing assistance with respect to the ongoing prosecution of the

13   Patents as requested by Solidus and Solidus' patent lawyer handling the cases.

14       Accordingly, in the absence of a prompt ruling by this Court clarifying the Debtor's and

15   Biometric's rights to the Patents, the value of the Patents themselves will be substantially diminished

16   through inaction.

17                                         **II.**

18   **THE PATENTS ARE SUBJECT TO A RESULTING TRUST AND THEREFORE ARE NOT**

19                        **PROPERTY OF THE ESTATE**

20   **A.     The Patents are Subject to the Resulting Trust**.

21       A resulting trust has been termed an "intention-enforcing" trust, to distinguish it from the other

22   type of implied trust, i.e., the *constructive* or "fraud-rectifying" trust. The "resulting trust" carries out

23   the inferred intent of the parties. In re Sale Guar. Corp., 220 B.R. 660, 664 (9th Cir.BAP 1998)

24   quoting American Motorists Ins. Co. v. Cowan, 127 Cal.App.3d 875, 179 Cal.Rptr. 747, 752 (1982).

25       As held by the BAP in Golden Triangle Capital:

26           A resulting trust is a trust implied by operation of law to enforce the inferred
             intent of the parties to establish a trust. **A transaction that has failed to carry**
27           **out the parties' intent becomes a resulting trust, and a resulting trust cannot**
             **be part of the debtor's estate.**
28

1  In re Golden Triangle Capital, Inc., 171 B.R. 79, 82 (9th Cir.BAP 1994).

2        By employing its equitable powers in creating a resulting trust, a court seeks to enforce the

3  parties' intentions. In re Bushey, 210 B.R. 95, 104 (6th Cir. BAP 1997). The presumed intent of the

4  parties is inferred from their conduct, relationship, and surrounding circumstances. In re Szabo, 353

5  B.R. 554, 560 (Bankr.N.D.Ill. 2006).

6        For example, a resulting trust may arise where "there is an unenforceable agreement with a

7  party to whom property is transferred for that **party ... to transfer the property to the beneficiary of**

8  **the resulting trust at a subsequent date."** In re Surplus Furniture Liquidators, Inc. of High Point

9  199 B.R. 136, 143 (Bankr.M.D.N.C. 1995).

10       "A resulting trust differs from an *express trust* chiefly in that (1) it arises by operation of law,

11  without an expressed intent, and (2) the resulting trustee ordinarily has no duty other than to transfer

12  the property to the person entitled." In re Foam Systems, 92 B.R. 406, 409 (9th Cir. BAP 1988)

13  quoting 7 Witkin, *Summary of California Law*, "Trusts", §123, p. 5481 (8th ed.)(emphasis in the

14  original). *See also* In re Ward, 300 B.R. 692, 697 (Bankr.S.D.Ohio 2003) ("A resulting trust ... is

15  inferred from the nature of the transaction. Unlike the express trust, which arises from a transferor's

16  manifestation of intention to create it, a resulting trust arises from an intention that is legally attributed

17  to a transferor based on the nature of the transaction rather than from manifested intent. The inference

18  of a resulting trust makes it unnecessary to prove by affirmative evidence an intention to create a trust,

19  or to reserve a trust interest, in favor of the transferor.") (internal citations and quotation marks

20  omitted).

21       Here, the intention of the parties could not be clearer.

22    (1)    The Agreement expressly provides that the Debtor had the option not pay to Biometric

23           the Final Payment, in which event the Debtor would reconvey, assign and transfer its

24           entire right, title and interest in the Transferred Patents to Seller.

25    (2)    On August 3, 2007, Solidus exercised its rights and advised in writing that it was not

26           paying the Final Payment and was ready to reconvey, assign and transfer the Patents

27           back to Biometric.

28

(3)   Consistent with its election above, Solidus did not make the Final Payment by the August 7, 2007 deadline, nor at any time thereafter.

(4)   Biometric prepared the conveyance documents and Solidus gave repeated assurances that the conveyance would be effectuated.

(5)   Solidus did not list Biometric in its list of 20 largest creditors.[1] If Solidus intended to treat Biometric as a creditor for the $3 million final payment, rather than as the beneficial owner of the Patents, then Biometric's $3 million claim would certainly have been set forth on the list of the 20 largest creditors.

Based upon the August 3rd letter, it was the intention of the parties that Solidus would thereafter have no obligation to make the Final Payment, and that the Patents would be reconveyed to Biometric. Accordingly, as of August 3, 2007, Solidus declined any further beneficial rights to the Patent and acknowledged its intention to formally convey title back to Biometric. Accordingly, at best, Solidus only held nominal legal title subject to its intention and obligation to convey such title to Biometric. Accordingly, the Court should enforce the inferred intent of the parties, and hold that the Patents are subject to a resulting trust.

**B.    Property Subject to a Resulting Trust is Not Property of the Estate.**

"The resulting trust having been determined by law to exist, the trustee has no equitable rights in the trust, and the res is not property of the estate pursuant to § 541." In re Markair, Inc., 172 B.R. 638, 641 -642 (9th Cir. BAP 1994). Accordingly, the Patents are not property of the bankruptcy estate.

To the extent the Debtor holds nominal legal title to the Patents, Biometric requests that the Court enter an order compelling the abandonment of the Patents to Biometrics, the beneficial owner. Since the Debtor holds no beneficial interests in the Patents, it is of no value to the bankruptcy estate. This principle was recognized by the Court in In re Dahlquist, 34 B.R. 476, 484 (Bankr.D.S.D. 1983):

---

[1] The Debtor attached a list of its 20 largest creditors as exhibit "A" to the Declaration of Robert M. Sigler filed on or about November 19, 2007. See Exhibit "5" attached to the McNeal Declaration. The 20 largest claims range from $390,000 to $7.4 million. Accordingly, if the Debtor believed Biometric was a creditor, it would have clearly been listed therein. This fact re-confirms the Debtor's election to re-convey the Patents rather than incur the $3 million final payment.

Under section 541(a) of the Bankruptcy Code, all of a debtor's interests, both legal and equitable, become part of the bankruptcy estate. Subsection 541(d) of the Code, however, stands for the proposition that the estate acquires no greater interest in property, except through certain lien avoidance provisions contained elsewhere in the Code and not applicable here, than that possessed by the debtor. Thus, if the debtor only has legal, but not equitable, title in certain property, the estate only holds legal title. A [resulting] trust, if established, recognizes bifurcated title, with the entity possessing the property having only bare legal title, while the beneficial or equitable interest is held by the person entitled to the property. **Bare legal title is of no value to a bankruptcy estate and ... the subject property should be abandoned under 11 U.S.C.A. § 554 (1979) or merit an order conveying it to the equitable owner**.

In re Dahlquist, 34 B.R. 476, 484 (Bankr.D.S.D. 1983) (emphasis added). See also In re Sun Belt Elec. Constructors, Inc., 56 B.R. 686, 691 (Bankr.N.D.Ga. 1986) ("The *Georgia Pacific* Court notes that if the debtor has no equitable interest in the joint check, then his 'sole permissible administrative act with regard thereto would be to pay over or endorse the sums due to the beneficial owners of the property.' The *Dahlquist* Court suggests that when the debtor in possession has only a legal interest in property, the trustee should abandon that legal interest under 11 U.S.C. § 554 or the Court should order the trustee to turn it over to the equitable owners.")

**C.    A Resulting Trust is Superior to the Trustee's Strong Arm Powers**.

Biometric further observes that a resulting trust is superior to the trustee's strong arm powers under Section 544(a). "Once the trust is declared, the remedy is delivery of the res by the trustee to the beneficiary. **A resulting trust can defeat the trustee's strong arm powers under § 544**. The resulting trust having been determined by law to exist, the trustee has no equitable rights in the trust, and the res is not property of the estate pursuant to § 541." In re Markair, Inc., 172 B.R. 638, 641 -642 (9th Cir. BAP 1994) (emphasis added). Accordingly, the Debtor can not challenge Biometric's beneficial interest based upon Section 544(a).

**D.    A Resulting Trust is Superior to the rights of a Lien Creditor**.

Biometric further observes that a resulting trust is superior to the rights of a lien creditor:

Under California law a lien creditor cannot prevail against a resulting trust. *In re Rogal, supra,* 112 F.Supp. at 717. *See also Dennes v. Butts,* 90 F.2d 522, 524 (9th Cir.1937). Only a bona fide purchaser for value without notice can upset a resulting trust. Cal.Civ.Code Section 856; *In re Rogal, supra,* 112 F.Supp. at 717.

Matter of Torrez, 63 B.R. 751, 754 (9th Cir. BAP 1986).

1    As set forth above, Biometric discovered through the USPTO a security interest filed against

2   Solidus' interests in the Patents by the Bank of New York in February 2006, and realized at that time

3   that Solidus had transferred to the Bank of New York, for collateral purposes, its interest in the

4   Patents without the consent of Biometric as per the Agreement. <u>By the express terms of the Patent</u>

5   <u>Acquisition Agreement, Solidus could not transfer any of its rights to the Patents to any third party</u>

6   <u>without Biometrics's express consent</u>. Notwithstanding this covenant, Solidus purportedly assigned

7   the Patents as collateral for the pre-petition loan of the Funding Lenders. It cannot be undisputed that

8   the Solidus lacked the contractual right to convey a lien thereon.

9    Biometric has been informed that the Collateral Agent had been provided a copy of the

10   Agreement prior to funding the pre-petition loan. The Collateral Agent was given the Agreement as

11   part of its due diligence. Accordingly, the Collateral Agent had knowledge of the covenant

12   prohibiting any transfer of rights, as well as Biometric's right to reconveyance of the Patents.

13    Biometric contacted Solidus to inquire about this situation, and Solidus informed Biometric

14   that it would work on having the lien removed, and get the documentation completed. Solidus was

15   contacted several subsequent times by Biometric partners and Biometric counsel regarding the release

16   of the Patents, and Solidus informed Biometric that communications were in progress with the lien

17   holder and that it should be resolved soon.

18    As a matter of law, the Funding Lenders could take no greater rights in the Patents as

19   collateral, than held by Solidus. A secured creditor "acquires no greater right to the property attached

20   than had the debtor, whom he succeeds." <u>Carina Mercury, Inc. v. Igaravides</u>, 344 F.2d 397, 400 (1st

21   Cir. 1965). *See also* <u>In re Dow Corning Corp.</u>, 192 B.R. 428, 439-440 (Bankr.E.D.Mich. 1996) ("a

22   judgment lien creditor would be defeated by a party entitled to assert a constructive trust upon the

23   property that was in the possession of the judgment debtor, **since the lien creditor takes no greater**

24   **rights in the property than the judgment debtor.**"); <u>In re Jeter</u>, 48 B.R. 404, 408-409

25   (Bankr.N.D.Tex. 1985) ("The bank acquired no greater rights than those possessed by its assignor");

26   <u>In re Friedman,</u> 241 F. 603, 604 (E.D.N.Y. 1917) ("Creditors get no more rights than the bankrupt

27   had"); <u>In re Sunflower State Refining Co.</u>, 183 F. 834, 836 -837 (D.Kan. 1911) ("the attaching

28   creditor merely takes under one of the parties and gets no greater rights or interest than the party had

1  under whom he takes ... and he takes nothing and cannot take anything from some other person who

2  holds adversely to the party under whom he takes. In attaching the property he parts with nothing, and

3  cannot in equity claim more than the person under whom he takes had a right to claim."

4      Counsel for OZ/Denarius specifically conceded this point at the November20th hearing - "So,

5  suffice to say that we're only getting a lien on what the estate has from the point of the secured

6  lenders." 11/20/07 Transcript, 28:1-2, attached as exhibit "2" to the Jensen Declaration.

7      Any claim of the funding lenders or its agents the Bank's claim that it holds a duly perfected

8  lien against the patents fails even under California Commercial Code, if the Funding Lenders or its

9  agents knew that the Solidus was barred from pledging this property.  See, East Coalinga Oil Fields

10  Corp. v. Robinson, 86 Cal.App.2d 153 (1948) ("The discussion in appeal number 7404, 194 P.2d 561,

11  with respect to passage of title to Hawson of the share represented by certificate number 5 claimed by

12  Jennie McArthur is equally applicable to this transaction, and for the reason therein stated, Hawson,

13  having had actual knowledge of the prior assignment, took, subject to the superior equities of Brown,

14  a fractional interest in the share represented by certificate number 8."); In re Cutty's-Gurnee, Inc., 133

15  B.R. 934, 956 (Bankr. N.D. Ill. 1991) ("The fact that Great American conducted a title search and

16  satisfied outstanding liens uncovered thereby does not mitigate the actual knowledge held by it nor

17  does it fulfill its duty of further inquiry regarding the MorAmerica interest. The Court rejects this

18  position and finds that where a party has actual knowledge of an equitable mortgage created by a

19  written, enforceable agreement prior to such party's acquisition of any interest in the property, such

20  party cannot satisfy its duty of inquiry merely by doing a title search, and will be precluded from

21  taking a priority position over the equitable mortgage. As demonstrated in Shacket, Ehrlich, Martin

22  and Millikin, whether a party is under a duty of inquiry depends upon the facts and circumstances of

23  which such party had actual knowledge and once such a duty arises and is not satisfied, such party is

24  properly charged with knowledge all of facts which would have been uncovered by a reasonably

25  diligent inquiry. Any such reasonably diligent inquiry here would have revealed the immediate

26  existence of MorAmerica's equitable mortgage interest."); see also, Cal. Civ. Code Sec. 19 ("[e]very

27  person who has actual notice of circumstances sufficient to put a prudent [person] upon inquiry as to a

28  particular fact, has constructive notice of that fact in all cases in which, by prosecuting such inquiry,

1   he might have learned such fact."). At bottom, the Article 9 of the California Commercial Code only

2   protects good faith lienors without knowledge or prior claims against the property. Here that predicate

3   does not exist.

**III.**

**IF AND TO THE EXTENT NECESSARY, BIOMETRIC SEEKS TO AMEND THE FINAL ORDER AUTHORIZING EMERGENCY FINANCING IN THE INVOLUNTARY PROCEEDING AND THE INTERIM ORDER AUTHORIZING THE EMERGENCY MOTION IN THE CHAPTER 11; AND OBJECTS TO THE MOTION FOR A FINAL ORDER AUTHORIZING EMERGENCY FINANCING IN THE CHAPTER 11 PROCEEDING.**

On December 11, 2007, the Court entered its "Final Order (I) Authorizing Emergency Financing Pursuant to Sections 303(f) and 105(a) of the Bankruptcy Code, (II) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, and (III) Providing Adequate Protection to Lenders Pursuant to Sections 361 And 363 of the Bankruptcy Code ("Final Financing Order"). On December 17, 2007, the Court entered an Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to Section 364 of the Bankruptcy Code, (III) Authorizing use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (IV) Providing Adequate Protection to Prepetition Lenders Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and (V) Scheduling a Final Hearing ("Interim DIP Financing Order").

Neither the Final Financing Order nor the Interim DIP Financing Order purported to resolve the extent of the Debtor's or Biometric's interest in the Patents. Moreover, the Final Financing Order provides for the granting of liens against the Debtor's "assets or property" and not any greater rights than those held by the Debtor. At the November 20th hearing on the Financing Motion, Debtor's counsel expressly stated that the Financing Motion would not resolve the ownership of the Patents, which is a separate issue for a later proceeding:

> Mr. Johnston: ...We are not seeking a priming lien. **We are not seeking to supersede anybody's ownership interest in these patents** ***
>
> Mr. Johnston: ...I think the changes to paragraph six or the clarifications to footnote six make it clear that [Biometric's] rights as well as all other parties in interest

| | | |
|---|---|---|
| 1 | | other than the Debtor and successors would reserve the right to challenge the liens |
| 2 | The Court: | I think that's correct, Ms. Parmes. |
| | Ms. Parmes: | Thank you. |
| 3 | Mr. Johnston: | With respect to the patents, let's be clear what we're doing and what we're |
| 4 | | not doing. **If the Debtor actually did relinquish the ownership of these assets, it has nothing on which to grant a lien now**. So if that's the case, |
| 5 | | then Biometric is protected.  If, in fact, the Debtor did not relinquish |
| 6 | | ownership of the patents prepetition and still owns them, then this order would grant a lien on them to the extent that the lenders don't already have |
| 7 | | a lien, which they assert that they do. |
| 8 | | So there's -- there is no additional prejudice to Biometric by virtue of this order. It's intended to **leave for another day the dispute regarding** |
| 9 | | **ownership of the patents** if there is a dispute and to enable these funds to come in the door. |
| 10 | | *** |
| 11 | Mr. Johnston: | Your Honor, I think Ms. Parmes is asking you to decide the question of ownership, and there's no basis to do that now. |
| 12 | The Court: | Well, if I were to make a decision, I would have to decide the issue one way or another, and I don't think I have enough information or enough |
| 13 | | time to do that today. *** |

See 11/20/07 Transcript, 14:22-24; 19:7-20; 20:5-7 (emphasis added), attached as exhibit "2" to the

Jensen Declaration.

   Accordingly, Biometric believes that the relief requested by this Motion should not be

prejudiced by any of the Court's financing orders in light of such representations.

   Notwithstanding, the Debtor or the Secured Lenders may somehow assert that the relief herein

is precluded by the Final Financing Order.  Accordingly, in an abundance of caution, Biometric

moves under F.R.C.P. 52(b) and 59(e)[2] to alter or amend the Final Financing Order (entered during

the involuntary proceeding) and/or the Interim DIP Financing Order (entered after of the order for

relief) to the extent necessary to prevent any inconsistency with the relief requested in this Motion.

Moreover, after the entry of the order for relief, the Debtor filed a DIP Financing Motion[3] which is set

---

[2] Applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023.
[3] On December 14, 2007, the Debtor filed a Motion for Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to Section 364 of the Bankruptcy Code, (III) Authorizing use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (IV) Providing Adequate Protection to Prepetition Lenders Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and (V) Scheduling a Final Hearing ("DIP Financing Motion").

1  a final hearing on January 17, 2008.  To the extent there is any inconsistency in the relief requested by

2  this Motion and the relief requested at the final hearing on the DIP Financing Motion, this Motion

3  should also be construed and interpreted as an objection to the DIP Financing Motion.

4       Biometric further seeks reconsideration of the Final Financing Order on the grounds that such

5  relief is not available to an Alleged Debtor during the gap period.  As the Financing Motion

6  recognizes, Bankruptcy Code Section 364, 11 U.S.C. § 364 -- which vests the Bankruptcy Court with

7  authority to approve the granting of secured indebtedness on a senior basis -- does not and cannot

8  apply during the involuntary gap period.  See, In re Roxy Roller Rink Joint Venture, 73 B.R. 521, 527

9  (Bankr. S.D.N.Y. 1987) (holding that 11 U.S.C. § 364 does not apply in involuntary bankruptcy cases

10  until an order for relief is entered).  The debtor's power to seek and the court's authority to approve a

11  secured financing arrangement is correspondingly limited.  See, e.g., In re E.D. Wilkins Grain Co.,

12  235 B.R. 647, 650 (Bankr. E.D.Cal. 1999) ("During the period prior to entry of an order for relief,

13  commonly referred to as the gap period, the debtor may continue to operate its business.  See, 11

14  U.S.C. § 303(f).  This grant of authority, however, does not invest the debtor with the powers of a

15  trustee.") (citation omitted).  "Not only is the involuntary gap debtor not a trustee or vested with a

16  trustee's powers, except to the extent specified in 11 U.S.C. §§ 303(f), 502(f), 507(a)(2), and 549(b),

17  the debtor does not have the authority to bind the bankruptcy estate during the gap period."  Id.

18       As the Bankruptcy Code does not permit involuntary debtors to utilize the provisions of

19  Bankruptcy Court Section 364 until an order for relief is entered, a party cannot circumvent this

20  restriction just by citing to Bankruptcy Code Section 105(a), 11 U.S.C. § 105(a).  That section may

21  only be used to carry out the provisions of the Bankruptcy Code; it cannot be used to get around them.

22  "The Bankruptcy Code limits the equitable powers of bankruptcy courts to the issuance of 'any order,

23  process, or judgment that is necessary or appropriate to carry out the provisions of this title.'  11

24  U.S.C. § 105(a).  Thus, a bankruptcy court must locate its equitable authority in the Bankruptcy

25  Code."  Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.), 392 F.3d 1064, 1070 (9th

26  Cir. 2004); see also, Norwest Bank Worthing v. Ahlers, 485 U.S. 197, 206, 99 L.Ed.2d 169, 108 S.Ct.

27  963 (1988) ("Whatever equitable powers remain in the bankruptcy courts must and can only be

28  exercised within the confines of the Bankruptcy Code.").

## IV.

## <u>CONCLUSION</u>

Based upon the foregoing, Biometric respectfully request that the Court enter an order (i) imposing a resulting trust and determining that the Debtor lacks any beneficial interest in certain Patent Rights described herein, (ii) compelling abandonment thereof to the beneficial owner, Biometric, (iii) to the extent necessary, amending the Final Order Authorizing Emergency Financing entered on December 11, 2007, pursuant to F.R.C.P. 52(b) and 59(e), (iv) to the extent necessary, amending the Interim DIP Financing Order entered on December 17, 2007, (v) to the extent necessary, construing this pleading as an objection with respect to the final hearing on the Debtor's DIP Financing Motion, and (vi) such further relief as the Court deems just and proper.

DATED:  December 21, 2007

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By: <u>/s/ Paul J. Couchot</u>
　　　Paul J. Couchot
Counsel for Biometric Payment Solutions

#120273 v2 - Biometric Mtn Abandon

## DECLARATION OF STEPHEN JENSEN

I, Stephen Jensen, declare as follows:

1.    I am an attorney duly licensed to practice before the courts of the State of California and before this Court. I am a member of the law firm of Knobbe Martens Olson & Bear LLP, intellectual property counsel for Biometric Payment Solutions ("Biometric"). I have represented Biometric and/or the principals thereof since 2004. I make this declaration based upon facts within my personal knowledge and if called as a witness, I could and would competently testify thereto.

2.    Soon after I received Solidus' notification that it had elected to return the Patents and not maintain a reservation, I noted a filing by the Bank of New York relating to the Patents which Solidus had elected to return to Biometric. The filing by the Bank of New York referenced a long list of Patents and patent applications. I quickly notified Steve Zelinger, General Counsel for Solidus, of the filing and requested that Solidus quickly clear up this filing, so the formal papers could be completed. Steve Zelinger and I spoke shortly after I noted the recorded document by the Bank of New York. He indicated that management for Solidus was working on clearing this up so that the paperwork could be completed. A true and correct copy of my e-mail sent to Mr. Zelinger on August 24, 2007 in this regard is attached hereto as Exhibit "1" and incorporated herein by this reference.

3.    I spoke with Steve Zelinger on another occasion, and he reaffirmed that he had raised the issue with management, and that they had it on a list of things to address with the Bank of New York, and again, he expected it to be resolved. Steve Zelinger, in the course of our conversations, indicated that he understood it was the obligation of Solidus to get the paperwork completed, that he was attending to this.

4.    Throughout the months extending from August 2007, and even after the filing of the petition for involuntary bankruptcy, Steve Zelinger consistently maintained that the decision to return the Patents was effective, and that the task of getting the proper documentation to reflect the return was a task that would be completed. Indeed, all discussions with Steve Zelinger accepted that the Patents now belonged to Biometric, but that the only thing remaining was to complete the formality of the paperwork for the US Patent Office.

5.     In one of my several conversations with Mr. Zelinger regarding this issue, he also confirmed to me that Solidus had provided a copy of the Agreement to the Bank of New York prior to the inception of the pre-petition loan giving rise to the purported lien on the Patents. Consequently, the Senior Lenders took the purported lien on the underlying Patents with knowledge of the ante-assignment provision, as well as knowledge of the Debtor's option to forfeit title to the underlying Patents in lieu of making the $3,000,000 payment.

6.     Pursuant to the Agreement, Biometric has several ongoing duties. Some material duties appear in Section 2.1 "Seller Assistance", which requires among other things, assisting Solidus in infringement matters, including testifying as a witness. Pursuant to this provision, prior to August 3, 2007, Solidus had continually enlisted the assistance of both Ms. Tibor-McNeal and myself. I was enlisted to provide assistance in litigation enforcing the Patents by Solidus, in identifying other parties that might potentially infringe as requested by Solidus, and in providing assistance with respect to the ongoing prosecution of the Patents as requested by Solidus and Solidus' patent lawyer handling the cases.

7.     On November 20, 2007, I participated telephonically in the hearing before the Bankruptcy Court on the Debtor's Emergency motion for an Interim Order (I) Authorizing Emergency Financing Pursuant to Sections 303(f) and 105(a) of the Bankruptcy Code; (II) Authorizing use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Providing Adequate Protection to Lenders Pursuant to Sections 361 and 363 of the Bankruptcy Code, and (IV) Scheduling a Final Hearing ("Financing Motion"). A true and correct copy of the transcript of the November 20th hearing is attached hereto as Exhibit "2" and incorporated herein by this reference. At the hearing, Solidus's counsel confirmed its decision to return the Patents and I understood that the Court based its decision to grant the motion, in part, on various representations that Biometric's rights would not be prejudiced by the order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21st day of December 2007, at Irvine, California.

_Stephen Jensen_

21

MAINDOCS-120273-v2-Biometric Mtn Abandon (3).DOC

## DECLARATION OF JOAN TIBOR MCNEAL

I, Joan Tibor McNeal, do declare as follows:

1.    I am a general partner of Biometric Payment Solutions ("Biometric"). The facts stated herein are within my personal knowledge and if called upon to testify to the same, I could and would competently thereto.

2.    In June, 1999, I caused to be filed a patent application for an invention entitled CHECK VERIFICATION SYSTEM, which later issued as U.S. Patent No. 6,728,397 (the "first Patent"). Thereafter, on June 12, 2007 a Continuation-in-Part, patent No.7,231,068, was issued by the USPTO (the "second Patent"). Lastly, *pending* patent Publication No. 20050097037 (the "third Patent") was issued a Notice of Allowance in October, 2007.   The first patent, second patent and third patent (collectively "the Patents") are jointly owned by partners of Biometric.

3.    On January 19, 2005, Biometric agreed to sell specific rights in the Patents to Solidus Networks dba PayByTouch ("Solidus") pursuant to the executory contract dated January 19, 2005, entitled Patent Acquisition Agreement ("the Agreement"), a copy of which is attached hereto as Exhibit "3", for an aggregate purchase price of  $6,000,000.00 and for other consideration, including ongoing royalties and minimum royalties.  Solidus, pursuant to the Agreement, was given specific rights to the Patents with the initial payment of $3,000,000.00.  A final payment of $3,000,000.00 was due within six months of the allowance date of the second Patent (that date being February 7, 2007). However, Solidus could opt to deliver all the Patents back to Biometric , or could opt to return the Patents but retain a nonexclusive license in the first patent thereby reducing the royalties by 50%. Pursuant to the Agreement, Solidus could only transfer an interest in the Patents with the written consent of Biometric.  Solidus never made such a request and Biometric never consented to such a request.

4.    On February 7, 2007, the second Patent was allowed by the USPTO.  Thus, pursuant to the Agreement, Solidus had six months from that date to pay the additional $3,000,000.00 or return the Patents, via assignment, to Biometric, or return the Patents but retain a nonexclusive license in the first patent thereby reducing the royalties by 50% pursuant to the Reservation.  Solidus notified Biometric in writing on August 3, 2007, that Solidus was exercising its option to return the Patents to Biometric.

1         5.      Pursuant to the Agreement, Biometric has several ongoing duties.  The most material of

2  such duties appear in Section 2.1 "Seller Assistance", which requires among other things, assisting

3  Solidus in infringement matters, including testifying as a witness.  Pursuant to this provision, prior to

4  August 3, 2007, Solidus had continually enlisted the assistance of both Mr. Stephen Jensen and

5  myself.  I was enlisted to provide assistance in litigation enforcing the Patents by Solidus, in

6  identifying other parties that might potentially infringe as requested by Solidus, and in providing

7  assistance with respect to the ongoing prosecution of the Patents as requested by Solidus and Solidus'

8  patent lawyer handling the cases.

9         6.      I received the letter dated August 3, 2007, from Solidus advising that pursuant to the

10  provisions of the Patent Assignment Agreement, Solidus was not going to make the Final Payment, as

11  defined therein, and was "ready to reconvey, assign and transfer right, title, and interest to the

12  Transferred Patents" to Biometric.  Attached as Exhibit "4" is a true and correct copy of the August 3,

13  2007 letter.

14         7.      Soon after I received the notification letter, I learned of the purported lien of the Bank

15  of New York.  Biometric never consented to the lien nor was its consent requested.  During this time

16  period, I was also told by Mr. Steve Zelinger, general counsel for Solidus, that the Bank of New York

17  had been provided the Agreement prior to making the loan.

18         8.      I have also reviewed Solidus's listing of its 20 largest creditors and note that Biometric

19  does not appear on such list.[4]  A true and correct copy of the Debtor's 20 largest creditors list is

20  attached hereto as Exhibit "5."

21         9.      For the reasons listed above and below, I believe that not only do the Patents rightfully

22  belong to Biometric, but that it is also in the best interests of Solidus, and its estate for Solidus to

23  consummate its intended performance under the Agreement by returning the Patents to Biometric:

24         a.      Solidus made a business decision to return the Patents to Biometric, and notified

25  Biometric of that decisions on August 3, 2007, while Solidus still had a functioning Board of

26  Directors, which approved the return of the Patents.  The Board purportedly apparently decided

27

28  [4] The Debtor attached a list of its 20 largest creditors as exhibit "A" to the Declaration of Robert M.
Sigler filed on or about November 19, 2007.  A copy of the Debtor's list of its 20 largest creditors is
attached as Exhibit "5" hereto.  The 20 largest claims range from $390,000 to $7.4 million.

#120273 v2 - Biometric Mtn Abandon

that it would return the Patents rather than make the $3,000,000 payment that would be due with the retention of the Patents.

      b.    By returning the Patents to Biometric, Solidus will decrease its future debt for royalties by a minimum of $7,000,000.

      c.    Under the Agreement with Biometric, Solidus not only has an obligation to pay royalties, but also has an affirmative duty to develop and commercialize products on which earned royalties are payable (Agreement 6.2(b)).  By the return of the Patents, Solidus eliminates these obligations.

      d.    By returning the Patents, Solidus alleviates the burden of producing quarterly financial reports reflecting royalty revenues.

      e.    Under the Agreement with Biometric, Solidus must prosecute the Patents, which incurs significant legal fees and expenses.  The Patents each have deadlines at the USPTO and in foreign patent offices, including payment obligations, in order to keep the Patents in full force and effect, .  For example, U.S. Patent Number 6,728,397 had a maintenance fee become payable in the United States Patent Office on April 27, 2007.  Solidus has not authorized the payment of this amount, and a surcharge became payable on October 27, 2007.  If the maintenance fee and surcharge are not paid by April 27, 2008, the patent will become abandoned, causing irreparable harm.  Certain filing dates for foreign protection corresponding to the Patents have also passed.  The Patents also continue to have pending applications in foreign markets that are not receiving any attention by Solidus.  Solidus was prohibited unless it made the Final Payment to abandon any such patent applications without the consent of Biometric.  Biometric has not consented to the abandonment of these Patents, yet due to inattention, patent applications are and will become abandoned in foreign countries very soon.  The issue fee for the third patent is due on February 2, and the fee remains unpaid. Without payment of the issue fee, the third patent will become abandoned, having serious irreparable consequences.  Given that Solidus made a business decision to return the Patents, it clearly has no remaining interest in incurring additional expense of pursuing the Patents.  Yet, because the Bank of New York continues to assert a right in the Patents, the Patents are in

limbo, but nobody is providing instructions to the patent attorney attending to the Patents, or paying the necessary fees, because Solidus rightly believes that the Patents belong to Biometric.  Thus, there is currently no party in authority from the U.S. Patent Office perspective that is maintaining and protecting the Patents.  Biometric desires to maintain and continue to pursue the Patents, but needs the Bank of New York to release its claim of rights to the Patents at the U.S. Patent Office..

      f.     The principals of Biometric (including myself as the inventor) have the knowledge and desire to continue to attend to the Patents.  To date, Solidus has not developed the Patents further than the manner in which it received them.  This may be a very costly endeavor that Solidus is not willing to bare considering its change in marketing and development strategies.

      g.     Biometric would be grossly and unjustly harmed if the Patents are not returned to Biometric based on the terms of the Agreement.

      h.     ***Neither*** Solidus nor its estate would be harmed by the Patents' return to Biometric, in that Solidus made a properly authorized decision to return the Patents, and the mere completion of paperwork was all that is required to complete the transfer of legal title.

      i.     Solidus' transfer of IP property belonging to Biometric to the Bank of New York for collateral purposes was a prohibited act.  As previously stated, Section 11.6 prohibited Solidus from transferring any of its rights in the Patents without the consent of Biometric, which consent was not requested nor provided.

      j.     I was told by Solidus that it provided the Bank of New York a copy of the Patent Acquisition Agreement, thus the Creditors and/or the Bank of New York had knowledge of the prohibited act prior to taking the Patents as security.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 21st day of December, 2007, in Waycross, Georgia.

## (SIGNATURE PAGE ATTACHED)

Joan Tibor McNeal

#120273 v2 - Biometric Mtn Abandon

1   facts, but nobody is providing instructions to the patent attorney attending to the Patents, or

2   paying the necessary fees, because Solidus rightly believes that the Patents belong to

3   Biometric. Thus, there is currently no party in authority from the U.S. Patent Office

4   perspective that is maintaining and protecting the Patents. Biometric desires to maintain and

5   continue to pursue the Patents, but needs the Bank of New York to release its claim of rights to

6   the Patents at the U.S. Patent Office..

7          f.     The principals of Biometric (including myself as the inventor) have the

8   knowledge and desire to continue to attend to the Patents. To date, Solidus has not developed

9   the Patents further than the manner in which it received them. This may be a very costly

10  endeavor that Solidus is not willing to bare considering its change in marketing and

11  development strategies.

12         g.     Biometric would be grossly and unjustly harmed if the Patents are not returned

13  to Biometric based on the terms of the Agreement.

14         h.     *Neither* Solidus nor its estate would be harmed by the Patents' return to

15  Biometric, in that Solidus made a properly authorized decision to return the Patents, and the

16  mere completion of paperwork was all that is required to complete the transfer of legal title.

17         i.     Solidus' transfer of IP property belonging to Biometric to the Bank of New

18  York for collateral purposes was a prohibited act. As previously stated, Section 11.6

19  prohibited Solidus from transferring any of its rights in the Patents without the consent of

20  Biometric, which consent was not requested nor provided.

21         j.     I was told by Solidus that it provided the Bank of New York a copy of the

22  Patent Acquisition Agreement, thus the Creditors and/or the Bank of New York had knowledge

23  of the prohibited act prior to taking the Patents as security.

24      I declare under penalty of perjury under the laws of the United States of America that the

25  foregoing is true and correct. Executed this 21st day of December, 2007, in Waycross, Georgia.

26

27                              Joan Tibor McNeal

28

MAINDOCS-120273-v2-Biometric Mtn Abandon (3)

## CERTIFICATE OF SERVICE

I, JEANNIE MARTINEZ, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; and my business address is 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, in said County and State.

On December 21, 2007, I served the following document(s): **NOTICE OF MOTION AND MOTION FOR ORDER (i) DETERMINING THAT DEBTOR LACKS BENEFICIAL INTEREST IN CERTAIN PATENT RIGHTS, (ii) COMPELLING ABANDONMENT THEREOF, (iii) TO THE EXTENT NECESSARY, AMENDING FINAL ORDER AUTHORIZING EMERGENCY FINANCING (iv) TO THE EXTENT NECESSARY, AMENDING THE INTERIM ORDER AUTHORIZING EMERGENCY FINANCING IN THE CHAPTER 11 PROCEEDING, AND (v) TO THE EXTENT NECESSARY, OBJECTION TO THE FINAL ORDER AUTHORIZING EMERGENCY MOTION IN THE CHAPTER 11 PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT THEREOF** on each of the interested parties (**stated on the attached service list/as follows):**

| | |
|---|---|
| Martin R. Barash, Esq.<br>mbarash@ktbslaw.com | Bruce Bennett<br>bennettb@hbdlawyers.com |
| Seth Goldman<br>seth.goldman@mto.com | Alan Z Yudkowsky<br>ayudkowsky@stroock.com |
| Robert M Yaspan<br>tmenachian@yaspanthau.com<br>rmyaspanlaw@aol.com | Kimberly S Winick<br>kwinick@mayerbrownrowe.com |
| United States Trustee (LA)<br>ustpregion16.la.ecf@usdoj.gov | Gilbert B. Weisman<br>notices@becket-lee.com |
| Courtney E Pozmantier<br>cpozmantier@ktbslaw.com | Karen Rinehart<br>krinehart@omm.com |
| joshua M Mester<br>mesterj@hbdlawyers.com | Tina M Pivonka<br>tpivonka@mkblaw.com,<br>senniss@mkblaw.com |
| | James O Johnston<br>johnstonj@hbdlawyers.com |

by the following means of service:

☒ **BY ELECTRONIC MAIL**: On the above-mentioned date, from Newport Beach, California, I caused each such document to be transmitted electronically to the parties at the e-mail address indicated above. To the best of my knowledge, the transmission was reported as complete, and no error was reported that the electronic transmission was not completed. A return receipt was requested at the time of the transmission of each such document and I did not receive a notice of failure of receipt of each such document.

☒ I am employed in the office of Winthrop Couchot Professional Corporation. Paul J. Couchot and is a member of the bar of this Court.

☒ **(FEDERAL)** | I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 21, 2007, at Newport Beach, California.

/s/ Jeannie Martinez
JEANNIE MARTINEZ

-26-

#120273 v2 - Biometric Mtn Abandon